# INTERNATIONAL UNION OF UNITED AUTOMOBILE, ETC. WORKERS OF AMERICA, C. I. O., ET AL. v. O'BRIEN, PROSECUTING ATTORNEY, ET AL.

No. 456. Argued March 30, 1950.—Decided May 8, 1950.

*Joseph L. Rauh, Jr.* argued the cause for appellants. With him on the brief was *Irving J. Levy.* •

By special leave of Court, *David P. Findling* argued the cause for the National Labor Relations Board, as *amicus curiae,* urging reversal. With him on the brief were *Solicitor General Perlman, Robert N. Denham* and *Mozart G. Ratner. Ruth Weyand* was also of counsel.

*Edmund E. Shepherd,* Solicitor General of Michigan, argued the cause for appellees. With him on the brief were *Stephen J. Roth,* Attorney General, and *Daniel J. O'Hara,* Assistant Attorney General. *Phillip A. McHugh* was also of counsel.

*David Previant* and *George S. Fitzgerald* filed a brief for the Michigan State Federation of Labor et al., as *amici curiae,* urging reversal.

Briefs of *amici curiae* supporting appellees were filed by *Thomas E. Fairchild,* Attorney General, *Stewart G. Honeck,* Deputy Attorney General, and *Beatrice Lampert,* Assistant Attorney General, of Wisconsin, and *Harold R. Fatzer,* Attorney General of Kansas, on behalf of the States of Kansas and Wisconsin; and by *Leon B. Lamfrom* for the Employers Association of Milwaukee.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

The constitutionality of the strike vote provision of the Michigan labor mediation law [1] is before us in this case. Appellants struck against Chrysler Corporation in May, 1948, without conforming to the prescribed state procedure. The strike was called to enforce demands for

---

[1] Mich. Stat. Ann. (Cum. Supp. 1949) §§ 17.454 (1) *et seq.;* Mich. Comp. Laws, 1948, §§ 423.1 *et seq.* At the time of appellants' strike, the pertinent provisions of the law read as follows:

"Sec. 9. No strike or lockout shall take place or be put into effect until and unless each of the steps have been taken and the requirements complied with as provided in this act.

"1. In the event the parties thereto are unable to settle any dispute, the employees or their representative, in the case of impending strike, or the employer or his agent, in the case of an impending lockout, shall serve notice upon the board of such dispute together with a statement of the issues involved. . . . not less than 10 days before the strike or lockout is to become effective, or in case of an industry affected with a public interest or a public utility or hospital, said notice shall be so served not less than 30 days before the strike or lockout is to become effective.

"2. Upon receipt of such notice it shall be the duty of the board to exercise the powers herein granted to effect a settlement of such dispute by mediation between the parties. Prior to the calling of an election as provided hereinafter, it shall be the duty of each of the

higher wages, and it was conducted peacefully. To enjoin possible criminal prosecution,[2] appellants instituted this suit in the state courts, contending that the statute violated the Due Process and Commerce Clauses of the Federal Constitution. The trial court upheld their contentions but the Michigan Supreme Court reversed. 325 Mich. 250, 38 N. W. 2d 421 (1949). We find no need to discuss the due process point, inasmuch as we hold that the court below erred in its decision on the commerce power.

Congress has not been silent on the subject of strikes in interstate commerce. In the National Labor Relations Act of 1935, 49 Stat. 449, 29 U. S. C. § 151, as amended by the Labor Management Relations Act, 1947, 61 Stat.

---

parties to such dispute to actively and in good faith participate in the mediation thereof. . . .

"Sec. 9a. In the event that it becomes apparent to the board that there is no reasonable probability of settlement of such dispute by mediation and that further efforts to that end would be without avail, there shall be held in the case of any impending strike, an election upon such issue which election shall be conducted and supervised by the board. In the event either party to said dispute notifies the board in writing . . . that in the opinion of such party, further efforts to settle such dispute by mediation would be without avail, it shall be the duty of the board to cause an election to be held within 10 days of the receipt of such notice unless it is not practical to hold such election within said period, in which event said election shall be held within 20 days of receipt of such notice . . . . Every employee in the bargaining unit shall be entitled to vote in such election and in order to authorize a strike under the provisions of this act, a majority of all employees in such bargaining unit must vote in favor of such action."

In 1949, the last requirement was amended to read, "a majority of all employees casting valid ballots must vote in favor of such action." This change is not material to our decision.

[2] The court below held that appellants' acts "rendered [them] subject to threatened criminal prosecution . . . ." 325 Mich. at 254, 38 N. W. 2d at 422. See § 22. We are of course bound by this interpretation of the state law.

136, 29 U. S. C. (Supp. III) § 141, Congress safeguarded the exercise by employees of "concerted activities" and expressly recognized the right to strike.[3] It qualified and regulated that right in the 1947 Act. It established certain prerequisites, with which appellants complied, for any strike over contract termination or modification. § 8 (d). These include notices to both state and federal [4] mediation authorities; both did participate in the negotiations in this case. In provisions which did not affect appellants, Congress forbade strikes for certain objectives and detailed procedures for strikes which might create a national emergency. §§ 8 (b) (4), 206–210. None of these sections can be read as permitting concurrent state regulation of peaceful strikes for higher wages. Congress occupied this field and closed it to state regulation. *Plankinton Packing Co.* v. *Wisconsin Board,* 338 U. S. 953 (1950); *La Crosse Telephone Corp.* v. *Wisconsin Board,* 336 U. S. 18 (1949); *Bethlehem Steel Co.* v. *New York Labor Board,* 330 U. S. 767 (1947); *Hill* v. *Florida,* 325 U. S. 538 (1945).

---

[3] See §§ 7, 2 (3), 13 of both Acts; H. R. Rep. No. 510, 80th Cong., 1st Sess. 59 (1947); S. Rep. No. 105, 80th Cong., 1st Sess. 28 (1947); statement of Senator Taft, 93 Cong. Rec. 3835 (1947), which includes the following: "That means that we recognize freedom to strike when the question involved is the improvement of wages, hours, and working conditions, when a contract has expired and neither side is bound by a contract. . . . We have considered the question whether the right to strike can be modified. I think it can be modified in cases which do not involve the basic question of wages, prices, and working conditions. . . . So far as the bill is concerned, we have proceeded on the theory that there is a right to strike and that labor peace must be based on free collective bargaining. We have done nothing to outlaw strikes for basic wages, hours, and working conditions after proper opportunity for mediation."

[4] Congress created a new federal agency, the Federal Mediation and Conciliation Service, to assist in the peaceful settlement of disputes. §§ 202–204.

Even if some state legislation in this area could be sustained, the particular statute before us could not stand. For it conflicts with the federal Act. The Michigan law calls for a notice given "In the event the parties . . . are unable to settle any dispute" to be followed by mediation, and if that is unsuccessful, by a strike vote within twenty days, with a majority required to authorize a strike. Under the federal legislation, the prescribed strike notice can be given sixty days before the contract termination or modification. § 8 (d). The federal Act thus permits strikes at a different and usually earlier time than the Michigan law; and it does not require majority authorization for any strike. This requirement of approval by a majority of the employees was contained in the Bill which passed the House of Representatives;[5] but the Act as finally adopted deliberately refrains from imposing the prerequisite of majority approval in each of its references to strike votes. §§ 203 (c), 209 (b)–210.

Finally, the bargaining unit established in accordance with federal law may be inconsistent with that required by state regulation. Though the unit for the Michigan strike vote cannot extend beyond the State's borders, the unit for which appellant union is the federally certified bargaining representative includes Chrysler plants in California and Indiana as well as Michigan. *Chrysler Corp.*, 42 N. L. R. B. 1145 (1942). Without question, the Michigan provision conflicts with the exercise of federally protected labor rights. A state statute

---

[5] H. R. 3020, 80th Cong., 1st Sess. § 2 (11) (B) (vi) (h) (1947). The legislative history demonstrates that this proposal was rejected on the merits, and not because of any desire to leave the states free to adopt it. See, *e. g.*, H. R. Rep. No. 510, 80th Cong., 1st Sess. 34–35 (1947); testimony of Governor Stassen, Hearings before Senate Committee on Labor and Public Welfare on S. 55 and S. J. Res. 22, 80th Cong., 1st Sess. 562–65, 572–78, 586–89 (1947).

so at war with federal law cannot survive. *Plankinton Packing Co.* v. *Wisconsin Board,* 338 U. S. 953 (1950); *La Crosse Telephone Corp.* v. *Wisconsin Board,* 336 U. S. 18 (1949); *Bethlehem Steel Co.* v. *New York Labor Board,* 330 U. S. 767 (1947); *Hill* v. *Florida,* 325 U. S. 538 (1945).

*Auto. Workers* v. *Wisconsin Board,* 336 U. S. 245 (1949), upon which Michigan principally relies, was not concerned with a traditional, peaceful strike for higher wages. The employees' conduct there was "a new technique for bringing pressure upon the employer," a "recurrent or intermittent unannounced stoppage of work to win unstated ends." *Id.* at 249, 264. That activity we regarded as "coercive," similar to the sit-down strike held to fall outside the protection of the federal Act in *Labor Board* v. *Fansteel Metallurgical Corp.,* 306 U. S. 240 (1939), and to the labor violence held to be subject to state police control in *Allen-Bradley Local* v. *Wisconsin Board,* 315 U. S. 740 (1942). In the Wisconsin *Auto. Workers* case, we concluded that the union tactic was "neither forbidden by federal statute nor was it legalized and approved thereby." 336 U. S. at 265. "There is no existing or possible conflict or overlapping between the authority of the Federal and State Boards, because the Federal Board has no authority either to investigate, approve or forbid the union conduct in question. This conduct is governable by the State or it is entirely ungoverned." *Id.* at 254. Clearly, we reaffirmed the principle that if "Congress has protected the union conduct which the State has forbidden . . . the state legislation must yield." *Id.* at 252. That principle is controlling here.
                                                              *Reversed.*

MR. JUSTICE DOUGLAS concurs in the result.