**POCAHONTAS TERMINAL CORPORA-TION v. PORTLAND BUILDING & CON-STRUCTION TRADE COUNCIL et al.**
Civ. No. 738.

United States District Court
D. Maine. S. D.
Sept. 21, 1950.

William S. Linnell, Sidney W. Thaxter, Portland, Me., for plaintiff.

Sidney W. Wernick, Jacob H. Berman, Portland Me., Henry Wise, Boston, Mass., for defendants.

CLIFFORD, District Judge.

This case is before the Court on plaintiff's motion to remand to the Supreme Judicial Court of Maine.

On the 11th day of August, 1950, the plaintiff filed in the Supreme Judicial Court of the State of Maine, for the County of Cumberland, a Bill of Complaint, in Equity, in which application was made for a temporary restraining order, a temporary injunction, and a permanent injunction to enjoin the defendants from the continuance of the picketing alleged by it in its complaint.

On the 15th day of August, 1950, the defendants, by regular and timely proceedings, removed the complaint to this Court. Two days thereafter, on August 17, 1950, the plaintiff filed in this Court its motion to remand the case to the Maine Court for the reason that this Court lacked original jurisdiction to hear the cause. At the conclusion of the hearing on the motion to remand, this Court issued its order overruling the motion.

Section 1441(a), U.S.C.A., Title 28, authorizes removal from the State Court to the United States District Court of "any civil action * * * of which the district courts of the United States have original jurisdiction * * *."

Section 1337, U.S.C.A., Title 28, confers original jurisdiction on the District Court "of any civil action or proceeding arising under any Act of Congress regulating commerce * * *." Under this section, jurisdiction does not rest on questions of amount involved or diversity of citizenship. See Mulford v. Smith, 1946, 307 U.S. 38, 46, 59 S.Ct. 648, 83 L.Ed. 1092.

The fundamental issue presented by the motion to remand is whether this action arises under any act of Congress regulating commerce. Section 1337, U.S.C.A., Title 28, provides the test to be applied in determining the question relating to the original jurisdiction of the United States District Court. The Act claimed applicable to sustain removal is the Labor-Management Relations Act of 1947, commonly known as the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq. While the complaint itself makes no mention of this statute and only incidental reference to the National Labor Relations Board, this Court takes judicial notice of any Federal laws necessarily brought into play by the allegations of the complaint; and it is immaterial that specific reference to such laws may be omitted in the pleading. Southern Pacific Company v. Stewart, 1917, 245 U.S. 359, 362, 38 S.Ct. 130, 62 L.Ed. 345; Downey v. Geary-Wright Tobacco Company, D.C. E.D.Ky.1941, 39 F.Supp. 33.

To determine whether the Taft-Hartley Act is the real basis of the present proceeding, this Court must ascertain:

(1) Whether the complaint shows a controversy affecting interstate commerce within the meaning of that law; and

(2) Whether the alleged illegality of defendants' acts, as set forth in the complaint, necessarily stems from the Taft-Hartley Act.

These questions must be answered from the face of plaintiff's complaint alone, as filed in the State Court, unaided by reference to any other pleadings or to the petition for removal itself. In Armstrong v.

Alliance Trust Co., 5 Cir., 1942, 126 F.2d 164, 167, the Court said: "In order to sustain the jurisdiction of the United States District Court on the ground of a federal question in a case removed thereto from a state court, it is not sufficient for the question to be raised in the answer of the defendant or in the petition for removal. The federal question must clearly appear on the face of the declaration or complaint as an essential and integral part of the plaintiff's statement of his own case, not in anticipation of a defense that may be interposed by an adversary party. A federal question merely incidental or collateral to the main controversy is not the basis of the suit and is not enough to deprive the state court of jurisdiction upon petition for removal by the defendant."

The complaint in this case alleges that the plaintiff is a corporation organized and existing under the laws of the State of Delaware and registered to do business in the State of Maine; and that the defendant, the Portland Building and Construction Trade Council, is a voluntary and unincorporated labor organization, embracing within its membership certain local unions affiliated with national labor organizations in the construction and building trades. Designated as defendants, likewise, are certain representatives of these local unions, named both as individuals and in their representative capacities. The plaintiff further alleges that it is the owner of certain real estate in the city of South Portland, Maine, located at 175 Front Street, upon which it is constructing an oil terminal consisting of an unloading pier and several large storage tanks; that it has employed three contracting companies to do the construction work involved; namely, W. H. Hinman and Company, a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with a place of business located in North Anson, Maine; Ellis C. Snodgrass, Inc., a corporation organized and existing under the laws of the State of Maine, with a place of business located in the City of Portland, Maine; and the Bethlehem Steel Company, the only bidder equipped to perform the job of construct-

ing the tanks themselves; that Hinman and Company and Snodgrass, Inc., employ non-union labor; that the Bethlehem Steel Company employs union labor; that the contract with Snodgrass, Inc., was signed on April 14, 1950; that shortly thereafter contracts were entered into by the plaintiff with the Hinman and Bethlehem Companies; that construction work proceeded from April 14, 1950 until July 27, 1950, when a picket line was placed around the entrance to the plaintiff's place of business where construction was under way; that these pickets carried placards stating that plaintiff was unfair to union labor; that as a result of the placing of the pickets here, the union employees of Bethlehem Steel Company refused to cross the line or perform work upon the job, and the construction of the oil storage tanks ceased and has not continued up until the date of the complaint; that the pickets in the picket line are all members of unions belonging to the defendant, Portland Building and Construction Trade Council, and were placed there by said council, the defendant, Joseph A. Vanier, Jr., or his or its officers, servants or agents; that the plaintiff has done everything in its power to determine the cause of the controversy and to reach a reasonable compromise thereof; that a hearing was had on August 3, 1950, before the Maine State Board of Arbitration and Conciliation, at which hearing the plaintiff, the Snodgrass and Hinman Companies, and the defendants were represented; that the representatives of the defendants complained that the Snodgrass and Hinman companies were employing non-union labor on the job, together with union men, and demanded that these companies employ only union labor on all their jobs throughout the State of Maine, thus, in effect, demanding a closed shop; that representatives of the Hinman Company agreed to employ union men on this job, but refused to accede to the union demand concerning the whole State of Maine; that the Snodgrass Company could not accede to the demands of the defendants to employ only union labor on this job because in 1948 its employees voted in an election before the National Labor Relations Board to have

a non-union shop and that certification of that election is still before the N. L. R. B.; that no strike is in progress on the plaintiff's property or against the Hinman, Snodgrass, or Bethlehem Steel Companies; that there is no dispute between the employees of these companies and the companies, their agents or officers, concerning working conditions, rate of pay, or unionization; that because of this picketing of plaintiff's premises the construction of the oil terminal is delayed and the plaintiff is suffering and will continue to suffer substantial and irreparable injury.

Finally, in the complaint, the plaintiff made application to the Maine Court for a temporary restraining order, a temporary injunction and a permanent injunction to enjoin the defendants from the continuance of the picketing or the doing of any other acts against the plaintiff to effectuate or accomplish any purpose which might be illegal or against the laws of the State of Maine and for such further relief as the nature of the case might require.

■ The above allegations of the complaint reveal that there is essentially involved here a controversy affecting interstate commerce within the meaning of the Taft-Hartley Law and this Court so holds.

Section 2(7) of the Taft-Hartley Act, 29 U.S.C.A. § 152(7), reads as follows: "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

An oil terminal is being constructed at 175 Front Street, South Portland, Maine, which is on the waterfront of South Portland and accessible to ocean-going vessels. The terminal will consist of an unloading pier and of several large oil storage tanks. There is a necessary inference from these facts that oil moving in the stream of interstate commerce will be received at this terminal when it is completed. There are other intimate points of contact between this case and interstate commerce. The complaint alleges that the National Labor Relations Board already has taken jurisdiction of the labor relations of Ellis C. Snodgrass, Inc., one of the contractors working on the terminal; and that one of the purposes of the picketing complained of is to compel Snodgrass to disregard the outcome of an election supervised by the National Labor Relations Board, by which the Snodgrass employees voted against union representation. The complaint by implication, at least, alleges that W. H. Hinman and Company, a second contractor working on the job, has other construction work throughout the State of Maine. One of the purposes of the picketing, according to the complaint, is to induce Hinman and Snodgrass to employ only union labor on all of their jobs in the State of Maine. By reason of the picketing complained of, the employees of the Bethlehem Steel Company, disclosed in the complaint as "the only bidder equipped to perform the job of constructing the tanks", have halted their work on the construction of the oil storage tanks. Since Snodgrass and Hinman are described in the complaint as local contractors, and Bethlehem Steel Company is not so described, it is fair to infer that Bethlehem Steel Company is not a Maine contractor. The work which has been halted, that is, the construction of the oil storage tanks, necessarily involves the use of large quantities of steel and other materials which are part of the stream of interstate commerce. The unions represented by defendants and the contractors involved in the controversy are all engaged in the building and construction industry, and that industry is affected by the controversy.

■ Whether a matter "affects commerce among the [several] States is a matter of practical judgment, not to be determined by abstract notions." Polish Alliance v. National Labor Board, 1944, 322 U.S. 643, 650, 64 S.Ct. 1196, 1200, 88 L.Ed. 1509. Under all the circumstances of this case as above set forth, it is clear that interstate commerce is affected by the controversy alleged in the complaint. Bethlehem Steel Co. v. New York State Labor Relations Board, 1947, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; International Brotherhood of Electrical Workers, Local 501 v. National Labor Relations Board, 2 Cir., 1950, 181 F.2d 34; Shore v. Building

and Construction Trades Council, 3 Cir., 1949, 173 F.2d 678, 8 A.L.R.2d 731; Slater v. Denver Building and Construction Trades Council, 10 Cir., 1949, 175 F.2d 608; United Brotherhood of Carpenters, etc. v. Sperry, 10 Cir., 1948, 170 F.2d 863.

The next question for determination is whether the illegality of the activities of the defendants as set forth in the complaint necessarily stems from the Taft-Hartley Law. The complaint states, in effect, that the defendants are picketing for the purpose of coercing W. H. Hinman Company and Ellis C. Snodgrass, Inc., to sign closed shop contracts with the unions. This type of activity is covered and made illegal by Section 8(b) (2).[1] The complaint further states, in effect, that the picketing by the defendants seeks to coerce the employees of Ellis C. Snodgrass, Inc., to become members of a union even though they have voted in a National Labor Relations Board election against joining the unions involved. If true, this allegation would constitute a violation of Section 8(b) (1) of the Taft-Hartley Law.[2] Finally, the complaint states, in effect, that the picketing by the defendants seeks to induce the employees of Bethlehem Steel Company to engage in a concerted refusal to perform services in the course of their employment at plaintiff's oil terminal for the purpose of forcing other employers, namely, Ellis C. Snodgrass, Inc., and W. H. Hinman Company to recognize the defendant labor organizations as the representatives of their employees even though such labor organizations have not been so certified by the National Labor Relations Board. If true, these allegations would constitute violations of Section 8(b) (4) (B).[3]

1. The material portion of section 8(b) (2), 29 U.S.C.A. § 158(b) (2), reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) * * *

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section * * *."

Subsection 8(a) (3) of the Act, 29 U.S. C.A. § 158(a) (3), reads in part as follows:

"(a) It shall be an unfair labor practice for an employer—

*　　*　　*　　*　　*　　*

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in section 8(a) of this chapter as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 9(a) of this chapter, in the appropriate collective-bargaining unit covered by such agreement when made; and (ii) if, following the most recent election held as provided in section 9(e) of this chapter the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to authorize such labor organization to make such an agreement * * *."

2. The material portion of section 8(b) (1), 29 U.S.C.A. § 158(b) (1), reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 of this chapter * * *."

The portion of section 7, 29 U.S.C.A. § 157, referred to, which is relevant here, reads as follows:

"(7) Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities * * *."

3. Section 8(b) (4) (B) of the Act, 29 U. S.C.A. § 158(b) (4) (B), reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

*　　*　　*　　*　　*　　*

■ Thus, it is the opinion of this Court that the allegations of the complaint clearly bring the case within the provisions of the Taft-Hartley Law relating to unfair labor practices and that it is these provisions which render the activities of the defendants, as alleged in the complaint, unlawful.

It is argued by plaintiff, however, that even though the Taft-Hartley Law prohibits the activities alleged in the complaint, the law of the State of Maine likewise declares defendants' picketing illegal; that, therefore, the effect of the Federal law may be disregarded as incidental and the complaint sustained by virtue of State law alone. Plaintiff, in this regard, relies on the Maine case of Keith Theatre v. Vachon, 1936, 134 Me. 392, 187 A. 692. Plaintiff contends that under this Maine case the defendants' picketing for a closed shop is unlawful under the Maine law and that, therefore, in the exercise of the State police power the State court may enjoin the picketing, on the strength of the decisions of the U. S. Supreme Court in Hughes v. Superior Court of Cal., 1950, 339 U.S. 460, 70 S.Ct. 718; International Brotherhood Teamsters Union v. Hanke, 1950, 339 U.S. 470, 70 S.Ct. 773; and Building Service Union v. Gazzam, 1950, 339 U.S. 532, 70 S.Ct. 784.

■ This contention cannot be sustained. Since Federal law has comprehensively entered the field here involved, the door must be regarded as closed to parallel State action. The mere fact that the Taft-Hartley Act applies to all aspects in which defendants' picketing is claimed illegal is itself sufficient to deny the applicability or relevance of State law covering the same ground. International Union of United Automobile Workers v. O'Brien, 1950, 339 U.S. 454, 70 S.Ct. 781. See also: Plankington Packing Co. v. Wisconsin E. R. B., 1950, 338 U.S. 953, 70 S. Ct. 491. LaCrosse Tel. Corp. v. Wisconsin Emp. Relations Bd., 1949, 336 U.S. 18, 69 S.Ct. 379. Bethlehem Steel Co. v. N. Y. State Labor Rel. Board, 1947, 330 U.S. 767, 7 S.Ct. 1026, 91 L.Ed. 1234. Hill v. State of Florida, 1945, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782.

The Taft-Hartley Law, by its own provisions, leads to the same conclusion. Section 10(a) of Title I of the Taft-Hartley Act, 61 Stat. 146, 29 U.S.C.A. § 160(a), provides in part that the National Labor Relations Board is empowered, as thereinafter provided, "to prevent any person from engaging in any unfair labor practice (listed in section (8)) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise".

Succeeding subsections of section 10 specify in detail the procedure to be followed in processing charges of unfair labor practices affecting commerce. Congress by enacting these provisions has undertaken to deal with such unfair labor practices, including the types of practice against which plaintiff's complaint is directed. Since the Taft-Hartley Act is applicable, it controls, to the exclusion of State law.

The Taft-Hartley Act applies to all aspects of the alleged illegality of the picketing by the defendants, and the cases cited by the plaintiff can be distinguished on this ground. It is to be emphasized that Keith Theatre v. Vachon, 1936, 134 Me. 392, 187 A. 692, was decided eleven years prior to the enactment of the Taft-Hartley Act by the Congress of the United States, so that no question was there raised, or involved, regarding the exercise of State power where Federal law has entered the field.

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: * * * (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9 of this chapter; * * *."

Similarly, in Hughes v. Superior Court, 1950, 339 U.S. 460, 70 S.Ct. 718, a Federal statute was not applicable. The Supreme Court ruled that a State court might enjoin peaceful picketing of a store, where the purpose of the picketing was to enforce a demand that the store select its employees in proportion to the racial origin of the store's customers. Such an injunction was held to be a permissible limitation on free speech by a State in the exercise of its police power. The facts of that case indicate that the controversy was a local one, not affecting interstate commerce, although the point is not discussed by the court. Had the controversy been one affecting interstate commerce, still the facts recite no unfair labor practice under the terms of the Taft-Hartley Act. Federal law had not entered the field; hence, State law could deal with the problem.

In Teamsters Union v. Hanke, 1950, 339 U.S. 470, 70 S.Ct. 773, the United States Supreme Court held that a State court might constitutionally enjoin peaceful picketing of an owner-operated auto repair and service station and used car lot, where the purpose of the picketing was to enforce the demand that the owner run a union shop, hire additional men, and close his business during designated hours. In Building Service Union v. Gazzam, 1950, 339 U.S. 532, 70 S.Ct. 784, the Supreme Court ruled that a State court might constitutionally enjoin peaceful picketing of a small hotel, employing fifteen persons, where the purpose of the picketing was to compel the employer to contract with a labor union and thus coerce the employees in their choice of a bargaining representative, contrary to State law. While the picketing described in the latter two cases might violate the unfair labor practice provisions of the Taft-Hartley Act, had that Act been applicable, the facts in both those cases indicate controversies of a local nature only, not affecting the stream of interstate commerce, in contrast with the controversy now before this Court.

Plaintiff places special emphasis on the case of Home Building Corp. v. Carpenters District Council, D.C.W.D.Mo.1943, 53 F. Supp. 804. When this case was decided Congress had not yet entered the field to specify unfair labor practices by unions. Hence, the illegality of the acts alleged was not and could not be founded on Federal law. The enactment of the Taft-Hartley Act, providing for unfair labor practices by unions, is the decisive and distinguishing feature between the Home Building Corp. case and the case at bar.

This Court, therefore, holds, on the authority of the very recent decision and analysis in International Union of Automobile Workers v. O'Brien, 1950, 339 U.S. 454, 70 S.Ct. 781, that because all of the activities alleged in the complaint to be illegal are within the scope and coverage of the union unfair labor practices provisions of the Taft-Hartley Act, there is no room for the application of State law. The case is controlled by a Federal law regulating commerce and is properly removable.

The words of Judge Ford of the United States District Court for the Eastern District of Kentucky, in Downey v. Geary-Wright Tobacco Company, 1941, 39 F.Supp. 33, 36, modified to fit the facts in the case at bar, are appropriate. "The plaintiff invokes the jurisdiction of the Maine Court to secure an injunction in a controversy which so directly affects interstate commerce that, in the exercise of its constitutional powers, the Congress has seen fit to regulate it and to prescribe the procedure to be followed in dealing with it. Labor-Management Relations Act of 1947, Section 10, 61 Stat. 146, 29 U.S.C.A. § 160. The plaintiff thus makes the determination and declaration of the law of the United States governing the controversy in issue an essential element of his case. It presents a claim and discloses a controversy of such a nature that it can only be correctly determined by a declaration of the law under and in the light of the Act of Congress. This is disclosed upon the face of the complaint."

This conclusion is not altered by plaintiff's contention that the restrictions of the Norris-La Guardia Act, 47 Stat. 70, 29 U.S.C.A. §§ 101–115, on the court's power to issue injunctive relief require remand

to the State court. It should be noted that the Norris-La Guardia Act does not take away the previously exercised power and jurisdiction of a United States District Court to enjoin picketing involving fraud or violence. See section 4(e) of the Act. The Norris-La Guardia Act restricts this Court's power to grant injunctive relief only with respect to those practices designated in section 4 of the Act. It does not deprive the court of jurisdiction to *consider* cases in which such relief is asked, or to grant other than injunctive relief therein.

 The test of removal to a Federal court is not what the court must ultimately do with the case under Federal law but whether the Federal law applies to and controls the case by its provisions, as brought into operation by the complaint. General Investment Co. v. Lake Shore Ry., 1922, 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244; Davis v. Nunley, 5 Cir., 1948, 168 F.2d 400, affirming D.C.N.D.Ala.1947; State of Florida ex rel. Watson v. Bellman, 5 Cir., 1945, 149 F.2d 890; Kolkin v. Gotham Sportswear, D.C.S.D.N.Y.1935, 10 F.Supp. 682.

It is clear that in the present case a Federal law regulating commerce is directly involved by the allegations of the complaint, so that this Court has original jurisdiction of the case, without regard to the final decision which this Court must reach, in accordance with the governing Federal law.

This Court has given serious consideration to the views expressed on this point in the case of Home Building Corp. v. Carpenters District Council, D.C.W.D.Mo. 1943, 53 F.Supp. 804, relied upon by the plaintiff in its brief, but adheres to the view that it does have original jurisdiction of the subject matter, even though it lacks the power to grant the relief prayed for. Davis v. Nunley, 5 Cir., 1948, 168 F.2d 400, affirming 13 Lab.Cas. 72,200 (D.C.N.D.Ala. 1947).

In conclusion, this Court is of the opinion that the complaint on its face and by implication involves the application of the Taft-Hartley Act, that this Court has original jurisdiction of the subject matter of the case, and that the case was properly removed to this Court from the Supreme Judicial Court of Maine.

For these reasons plaintiff's motion to remand was

Overruled.