65 So.2d 22 (1953)
HENDERSON, Sheriff,
v.
STATE ex rel. Lee.
HENDERSON, Sheriff,
v.
STATE ex rel. FRAZIER.
Supreme Court of Florida, en Banc.
May 5, 1953.
Lucille Snowden, Richard H.M. Swann, Miami, and Wendell C. Heaton, Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen., John A. Madigan, Jr., and William A. O'Bryan, Asst. Attys. Gen., for appellees.
MATHEWS, Justice.
These two cases involve a labor dispute between the Amalgamated Association of Street Electric Railway and Motor Coach Employees of America, Division 1267, of Dade County, Florida, and the Miami Transit Company. Frazier was President of the union and Lee was a member of the union and an employee of the Miami Transit Company. The appellees were arrested and held in custody under warrants charging and accusing them with a violation of F.S. Chapter 453, F.S.A., being Chapter 23911, Laws of Florida 1947, which is commonly known as the Florida Public Utility Arbitration Law.
Petition for writs of habeas corpus were brought by the appellees in the Circuit Court of Dade County, Florida, attacking the constitutionality of the Florida Public Utility Arbitration Law. After a hearing before the Circuit Judge, an order was entered denying motions to quash the writs of habeas corpus and discharging the appellees. This appeal is from that order.
There is no dispute about the facts. Elections were held by the union in 1941 and 1943 under the United States Department of Labor Conciliation and Mediation Service to determine the representative *23 status of the union for employees of the bus company involved in this cause. Since the enactment by Congress in 1947 of the so-called Taft-Hartley Act as an amendment of the National Labor Relations Act, 29 U.S.C.A. § 141 et seq., the union in question has complied with all of the provisions of that law and has negotiated under its terms. A collective bargaining agreement between the union and the bus company was entered into with reference to wages and working conditions of the employees, which expired on October 1, 1951. More than sixty days prior to that date and in compliance with the Labor Management Relations Act, the union submitted written proposals to the bus company for specified changes they wished to negotiate for in a new contract and offered to meet, and requested a conference with the company officials for the purpose of bargaining on such proposals. Proper notice was given to the Federal Conciliation and Mediation Service of the United States Department of Labor of the failure of the parties to reach an agreement, and at the time of the habeas corpus proceedings, negotiations were continuing under the direction of a representative of the Federal Conciliation and Mediation Service.
The Public Utility Arbitration Law contains the following provisions:
"453.05 Work interruption; prohibited  The conciliator so named shall expeditiously meet with the disputing parties and shall exert every reasonable effort to effect a prompt settlement of such dispute. From and after the filing of a petition with the governor as provided for in § 453.04 hereof, and until and unless the governor shall determine that the failure to settle the dispute with respect to which such petition relates would not cause severe hardship to be inflicted on a substantial number of persons, there shall be no interruption of work and no strikes or slowdowns by the employees, and there shall be no lockout or other work stoppage by the employer, until such time as all procedure provided for by this chapter has been exhausted or during the effective period of any order issued by a board of arbitration pursuant to the provisions of this chapter.
* * * * * *
"453.12 Penalty for violation by an individual  Any violation of this chapter by any member of a group of employees acting in concert, or by any employer or by any officer of an employer acting for such employer, or by any other individual, shall constitute a misdemeanor, punishable upon conviction by a fine of not more than one thousand dollars or by imprisonment in the county jail for not more than twelve months, or both."
It appears from the record that after the dispute arose the bus company, acting under F.S. Chapter 453, F.S.A., petitioned the Governor of Florida to call into effect the arbitration and conciliation provisions of the Florida law. The appellees refused to recognize this procedure and eventually called a strike.
Only one question is presented by this appeal, and that is: "Has Congress, by the enactment of the National Labor Relations Act of 1935, as amended by the Labor Management Relations Act of 1947, so completely preempted the regulation of peaceful strikes for higher wages in industries affecting interstate commerce, including public utilities, as to render invalid Chapter 453, Florida Statutes, F.S.A., as being in direct conflict with federal legislation?"
The Circuit Judge answered the above question in the affirmative by its order denying the motion to quash and discharging the appellees.
This case is controlled entirely by the majority opinion of the Supreme Court of the United States in the case of Amalgamated Association of Street Electric Railway and Motor Coach Employees of America, Division 998 v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 362, 95 L.Ed. 364. This case will hereafter be referred to as the "Wisconsin case".
The above case, decided by the Supreme Court of the United States, involved the *24 validity of the Wisconsin statutes of 1947, Section 111.50 et seq. The net result of the majority opinion in that case was that the Wisconsin statute, which prohibits strikes against public utilities and provides for compulsory arbitration of labor disputes after an impassee in collective bargaining has been reached, is invalid, because it is in conflict with the National Labor Relations Act, as amended by the Labor Management Relations Act of 1947.
For the purposes of this opinion, the Wisconsin Act is the same as the Florida Act. Any deviation in details between the two acts are of no importance in this case.
Among other things the majority opinion of the Supreme Court of the United States in the Wisconsin case specifically held:
"We have recently examined the extent to which Congress has regulated peaceful strikes for higher wages in industries affecting commerce. * * * We also listed the qualifications and regulations which Congress itself has imposed upon its guarantee of the right to strike. * * * Upon review of these federal legislative provisions, we held [International Union of United Auto Workers v. Obrien], 339 U.S. 454 at page 457, 70 S.Ct. [781] at page 783 [94 L.Ed. 978]:
"`None of these sections can be read as permitting concurrent state regulation of peaceful strikes for higher wages. Congress occupied this field and closed it to state regulation. Plankinton Packing Co. v. Wisconsin Board, 1950, 338 U.S. 953, 70 S.Ct. 491 [94 L.Ed. 588]; La Crosse Telephone Corp. v. Wisconsin Board, 1949, 336 U.S. 18, 69 S.Ct. 379 (93 L.Ed. 463); Bethlehem Steel Co. v. New York Labor Board, 1947, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; Hill v. State of Florida ex rel. Watson, 1945, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782.'
"* * * Congress * * * saw fit to regulate labor relations to the full extent of its constitutional power under the Commerce Clause, National Labor Relations Board v. Fainblatt, 1939, 306 U.S. 601, 607, 307 U.S. 609, 59 S.Ct. 668, 672, 83 L.Ed. 1014 [1019]. Ever since the question was fully argued and decided in Consolidated Edison Co. v. National Labor Relations Board, 1938, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126, it has been clear that federal labor legislation, encompassing as it does all industries `affecting commerce,' applies to a privately owned public utility whose business and activities are carried on wholly within a single state. * * *
"* * * In any event, congressional imposition of certain restrictions on petitioners' right to strike, far from supporting the Wisconsin Act, shows that Congress has closed to state regulation the field of peaceful strikes in industries affecting commerce. [International Union] United Auto Workers v. O'Brien, supra, 339 U.S. at page 457, 70 S.Ct. 781 at page 782 [94 L.Ed. 982]. And where, as here, the state seeks to deny entirely a federally guaranteed right which Congress itself restricted only to a limited extent in case of national emergencies, however serious, it is manifest that the state legislation is in conflict with federal law.
"* * * Such state legislation must yield as conflicting with the exercise of federally protected labor rights.
"* * * This Court, in the exercise of its judicial function, must take the comprehensive and valid federal legislation as enacted and declare invalid state regulation which impinges on that legislation.
"Fifth. It would be sufficient to state that the Wisconsin Act, in forbidding peaceful strikes for higher wages in industries covered by the Federal Act, has forbidden the exercise of rights protected by § 7 of the Federal Act. In addition, it is not difficult to visualize situations in which application of the Wisconsin Act would work at cross-purposes with other policies of the National Act. * * * That act requires that collective bargaining continue until an `impasse' is *25 reached, Wis. Stat. 1949, § 111.52, whereas the Federal Act requires that both employer and employees continue to bargain collectively, even though a strike may actually be in progress. * * *
"The National Labor Relations Act of 1935 and the Labor Management Relations Act of 1947, passed by Congress pursuant to its powers under the Commerce Clause, are the supreme law of the land under Art. VI of the Constitution. Having found that the Wisconsin Public Utility Anti-Strike Law conflicts with that federal legislation, the judgments enforcing the Wisconsin Act cannot stand."
The Federal Act has pre-empted the field and under that act, labor unions have the right within the limits prescribed thereby of peaceful strikes for higher wages, or for better working conditions. Where state legislation denies a right guaranteed by Congress, such state legislation is in conflict with Federal law. The state law in question substitutes compulsory arbitration for the right to strike.
In his brief the Attorney General correctly states: "The provisions of these two laws [Wisconsin and Florida] * * * are so similar in substantial intent and purpose as to render unimportant any deviation between them."
After discussing the minority and majority opinions of the Supreme Court of the United States in the Wisconsin case, the Attorney General made the following statement, or suggestion:
"Therefore, by this appeal, Appellant is frankly and honestly petitioning this Supreme Court of Florida to give deep consideration to the basic issue here involved before determining to accept and follow the ruling of the Supreme Court of the United States in the Wisconsin case. In other words, Appellant respectfully suggests that the Supreme Court of the United States, by its decision in the Wisconsin case, may have grievously erred, and is asking the Supreme Court of Florida to refuse to follow that precedent." (Emphasis supplied.)
The effect of this suggestion is to ask us to dissent from the majority opinion instead of following the same and being bound thereby. The suggestion is repugnant to the duty imposed upon us by Article 6 of the Constitution of the United States, and our oath of office.
If the Supreme Court of the United States has "grievously erred" in its interpretation and construction of the Federal Statute, it is not within the jurisdiction or province of this Court to dissent from that opinion or pit our judgment against their judgment. Those who practice before that Court may in a proper case reargue the matter, but the Justices of this Court are not authorized to do so.
Disputes between labor unions, capital and management are not new. There was a time in the history of their relationships when the right of peaceful striking for the purpose of increasing wages or improving labor conditions was questioned. Capital alone can make very little, if any, contribution to the welfare of the Nation without the employment of labor. Each is essential to the other. The necessity of labor in the progress, development, economy and greatness of the Nation is now fully recognized and from this recognition, legislation has been enacted by State Legislatures and by the Congress, primarily in furtherance of the public interest, but also for the protection of those whose labor is so vital to the Nation. Management, capital and labor are subject to valid regulatory legislation.
Anyone whose rights are established by such legislation may rely upon the law. In this case a labor union or members thereof seek the aid of the courts to protect rights guaranteed to them by law.
The question of the agreement of this Court with the majority opinion in the Wisconsin case is not involved in this opinion. Article 6 of the Constitution of the United States, among other things, provides as follows:
"This Constitution, and the Laws of the United States which shall be made *26 in Pursuance thereof; * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."
When a law, enacted by Congress, is construed and interpreted by the Supreme Court of the United States, that interpretation and construction becomes a part of the supreme law of the land, and an opinion by that tribunal upon the questions at issue is absolutely binding upon this Court, whatever may be the personal predilections of the Justices.
It is not the duty of the Federal Courts alone, but of all State Courts, to respect and be bound by the decisions of the Supreme Court of the United States. No good purpose can be served by inferior Federal Courts or Supreme Courts of the various states, or of any other courts, dissenting from the opinions of the Supreme Court of the United States in respect to Federal questions.
Unbridled, unauthorized, or irresponsible criticism of the highest Court of the Nation, and the opinions of such Court by State Supreme Courts, or other inferior courts, has a tendency to destroy the confidence of the people in the Court. Courts exist primarily for the protection of the people, our institutions and form of government. The Court may restrain other departments from President to Constable (the case of Executive Seizure of the steel mills being an outstanding example) from usurpation of power. Neither men, nor organizations, under our form of government, are immune from the restraining power of the courts.
Orderly government requires respect for and confidence in constituted authority. Unauthorized criticism of, disrespect for and dissents from the opinions of the highest court in the land by inferior courts will eventually destroy all confidence in that Court, resulting in contempt for the Nation's highest tribunal by whose opinions "the Judges in every State shall be bound."
Our form of government requires finality. There must be some tribunal from whose decisions there is no appeal. The Supreme Court of the United States is that tribunal. Should confidence in that tribunal be so undermined, or destroyed, that its opinions were not respected or binding upon anyone, government itself, as we know it today, would cease to exist and in its place we would have turmoil, confusion, anarchy or a dictatorship.
Every officer, whether in the executive, the legislative, or the judicial branch of our government, is required to take an oath that he will "support, protect, and defend the Constitution and Government of the United States * * *" F.S.A. Const. art. 16, § 2; and in accordance with Article 6 of the Constitution of the United States, "the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." So it is, that until the law is modified or changed by Congress, or the opinion with reference thereto is modified, changed or receded from by the Supreme Court of the United States, this Court and every other court, is bound to give full effect to the law as construed in the opinion, for it is the supreme law of the Land.
Affirmed.
ROBERTS, C.J., and TERRELL, THOMAS, SEBRING, HOBSON, and DREW, JJ., concur.