RETAIL CLERKS INTERNATIONAL ASSOCIATION ETC. ET AL.
*v.* JOHN C. GROUB CO., INC.

[No. 19,019. Filed May 13, 1958. Rehearing denied June 13, 1958. Transfer denied October 29, 1958.]

*Robert Karmel,* of Chicago, Illinois, and *H. Wayne Baker,* of Bedford, for appellants.

*Clarence J. Donovan, Paul Y. Davis* and *Davis,*

*Hartsock & Wright,* of counsel, all of Indianapolis, for appellee.

ROYSE, P. J.—This is an appeal from an order and judgment temporarily enjoining appellants from picketing appellee's place of business and from persuading or attempting to persuade any person or persons not to trade or deal with appellee at its stores.

Appellants first contend the trial court did not have jurisdiction of the subject matter of this action. Therefore, the granting of a temporary injunction was contrary to law.

In answer, appellee contends the jurisdiction of an Indiana court to enforce the positive policy declared by the State legislature is not ousted or preempted by the National Labor Relations Act.

A determination of the question presented requires a consideration of the evidence.

The parties stipulated certain facts which may be summarized as follows: Appellee is a corporation operating thirty-two retail grocery stores in Indiana, one of which is in Bedford. Appellant Retail Clerks International Association, District Council No. 12, is an unincorporated Association known as a labor union, and the named individual appellants are officers and members thereof. Certain of these individual appellants were engaged on behalf of said Union in procuring its recognition as the bargaining agent representing the employees of appellee's Bedford store. Prior to November 23, 1956, the individual appellants, except Schoffstahl, Leavitt and Carter, were employed by appellee at its Bedford store, on which day they ceased to work and for approximately two weeks thereafter some one or more of them picketed said store during the hours it was open for trade, bearing and displaying

signs which announced in substance, *"some* of the warehousemen and truckers of the J. C. Groub Company are on a strike, Teamsters Local 135." That on or about December 10, 1956, the appellants so picketing plaintiff's store began to display signs bearing the words "Employees of the Jay C. Store Food Mart at Bedford on strike—Please do not patronize. Retail Clerks' Union." And said individual appellants, before and after said date, verbally requested persons about to enter said store not to trade with appellee and requested that customers leaving said store should not return. That at the time the complaint herein was filed and for many years prior thereto, appellee made purchases of goods, wares and merchandise from points and sources outside of the State of Indiana in excess of one million dollars for the purpose of selling same at retail in its various stores in Indiana.

The oral evidence may be summarized as follows: Guy Fleenor, manager of appellee's store, saw some of appellants stop a customer and ask them not to trade there. On cross-examination he said on November 22, 1956, the store employed seventeen clerks. On that date one-third or less of them were receiving less than 50 cents an hour. Top wages for clerks were 90 cents an hour. *On November 23, 1956 eleven clerks walked out and all of them started picketing that night. The next week they dropped off to two at a time.* During the four weeks immediately before the trial there had never been more than two pickets.

On January 27, 1957 there were no employees making less than 50 cents an hour. The Company raised the wages about December 1, 1956. He hired new employees who started at a rate higher than 50 cents an hour. Some school boys were employed for Friday afternoon and Saturday at less than 50 cents an hour.

He does not know if the Company is paying its present employees additional compensation by reason of the fact that they are working behind picket lines.

There was evidence that several of the individual appellants picketed appellee's Bedford store and distributed pamphlets stating it refused to recognize the Union and would not negotiate and urging that appellee not be patronized because of the wages it paid its employees.

Copies of letters between the parties were introduced in evidence. There were some conferences between appellee's manager and certain individual appellants at which it was stated appellants demanded recognition of the Union as the bargaining agent of its employees, and that such employees should have the right during working hours to visit other stores of appellee in an effort to get such employees to join the Union. There was evidence appellee's sales were off about $2500 per week during the picketing. Appellee's manager said on December 3, 1956 they had thirteen clerks in the Bedford store. Ten were out on strike picketing at that time. Six of the thirteen employees on December 3rd were employees before November 23rd. The others were employed after the strike commenced.

Appellee's manager said the Teamster Union was also trying to organize its employees.

In support of their contention appellants say, "a state court is without jurisdiction to enjoin strikes or picketing activities which are either prohibited or protected by the National Labor Relations Act, where the employer involved is engaged in interstate commerce within the meaning of the Act. . . . The parties stipulated that the appellee made purchases of goods, merchandise and wares from points and sources directly outside of the State of Indiana in excess of $1,000,000

annually for the purpose of selling such goods at retail in the various stores . . . including the store in Bedford, Indiana." They then say, "Under the jurisdictional standards of the National Labor Relations Board, the Board will assert jurisdiction over intra-state chains or over any store or group of stores in the chain where the annual purchases for the chain from sources directly outside the state exceed one million dollars."

Appellee contends the jurisdiction of an Indiana court to enforce the positive policy declared by the State Legislature is not ousted or preempted by the National Labor Relations Act. It asserts the conduct here enjoined was not conduct regulated by the National Labor Relations Act and was not protected or privileged under any of its provisions, because it was conduct in violation of a positive statutory enactment of the State of Indiana.

For the reasons hereinafter stated, we cannot agree with the contention of appellee.

In the case of *Automobile Workers* v. *O'Brien,* 339 U. S. 454, the Supreme Court held the provisions of the Michigan labor mediation law which prohibits the calling of a strike unless a state provided procedure for mediation providing that before a strike is called a majority of the employees in a state defined bargaining unit must authorize the strike in a state conducted election, unconstitutional as invalid under the Commerce Clause of the United States Constitution. The Court, speaking through Mr. Chief Justice Vinson, said:

"Congress has not been silent on the subject of strikes in interstate commerce. In the National Labor Relations Act of 1935, 49 Stat. 449, 29 U. S. C. §151, as amended by the Labor Management Relations Act, 1947 61 Stat. 136, 29 U. S. C. (Supp. III) §141 Congress safeguarded the exercise by employees of 'concerted activities' and

expressly recognized the right to strike. It qualified and regulated that right in the 1947 Act. It established certain prerequisites, with which appellants complied, for any strike over contract termination or modification. §8 (d). These include notices to both state and federal mediation authorities; both did participate in the negotiations in this case. In provisions which did not affect appellants, Congress forbade strikes for certain objectives and detailed procedures for strikes which might create a national emergency. §§8 (b) (4), 206-210. None of these sections can be read as permitting concurrent state regulation of peaceful strikes for higher wages. Congress occupied this field and closed it to state regulations. (Citing authorities).

"Even if some state legislation in this area could be sustained, the particular statute before us could not stand. For it conflicts with the federal Act. The Michigan law calls for a notice given 'In the event the parties . . . are unable to settle any dispute' to be followed by mediation, and if that is unsuccessful, by a strike vote within twenty days, with a majority required to authorize a strike. Under the federal legislation, the prescribed strike notice can be given sixty days before the contract termination or modification, §8 (d)."

In distinguishing the case of *Auto Workers* v. *Wisconsin Board,* 336 U. S. 245, heavily relied on by appellee, the court said:

"The employees' conduct there was 'a new technique for bringing pressure upon the employer,' a 'recurrent or intermittent unannounced stoppage of work to win unstated ends.' Id. at 249, 264. That activity we regarded as 'coercive,' similar to the sit-down strike held to fall outside the protection of the federal Act, in *Labor Board* v. *Fansteel Metallurgical Corp.,* 306 U. S. 240 (1939), and to the labor violence held to be subject to state police control in *Allen-Bradley Local* v. *Wisconsin Board,* 315 U. S. 740 (1942). In the *Wisconsin Auto Workers* case, we concluded that the union tactic was 'neither forbidden by federal statute

nor was it legalized and approved thereby.' 336 U. S. at 265. 'There is no existing or possible conflict or overlapping between the authority of the Federal and State Boards, because the Federal Board has no authority either to investigate, approve or forbid the union conduct in question. This conduct is governable by the State or it is entirely ungoverned.' "

In *Garner* v. *Teamsters Union*, 346 U. S. 485, the court said: Petitioners were engaged in Pennsylvania in an interstate trucking business. Only a small minority of its employees were members of respondent union. No labor dispute or strike was in progress, and petitioners had not objected to their employees joining the union. Respondents kept two pickets at petitioners' loading platform, to coerce petitioners into compelling or influencing their employees to join the union. The picketing was peaceful, but petitioners' business fell off 95% because employees of other carriers refused to cross the picket line. Held: Petitioners' grievance was within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices under the Labor Management Relations Act, and was not subject to relief by injunction in the state courts.

*Guss* v. *Utah Labor Relations Board* (1957), 77 Sup. Ct. Rep. 598, held where a company was engaged in a business which affected United States Commerce, that only where the National Labor Relations Board had, under the provisions of an Act of Congress, ceded its power to the State, could the states intervene. It relies on several earlier cases. On the same day to the same effect it decided *Amalgamated Meat Cutters* v. *Fairlawn Meats, Inc.*, 77 Sup. Ct. Rep. 604; *San Diego Building etc. Co.* v. *Garmon et al.*, 77 Sup. Ct. Rep. 607. See also, *Retail Clerks International Association et al.* v. *J. J. Newberry Co.*, 352 U. S. 987.

We are of the opinion appellee is engaged in interstate commerce under the provisions of the National Labor Relations Act. It is undisputed the picketing in this case was peaceful. There was no labor violence necessitating state police control. The actions of appellants were either protected or prohibited by the provisions of this Act. If any rights of appellee were violated it could and should have first presented the question to the National Labor Relations Board. *Garner* v. *Teamsters Union, supra.*

Congress in enacting the National Labor Relations Act outlawed some types of labor activities, regulated other types and protected still other types of such activities. This law is the controlling and Supreme law of the land concerning the area of labor activities provided for therein. All of such area has been preempted by Federal authority and thereby withdrawn from state jurisdiction where the activities of the employer affect interstate commerce, except only where the National Labor Relations Board has ceded such authority to the states or where the Act makes no provision in reference to the question presented, as in *Auto Workers* v. *Wisconsin Board, supra.*

Therefore, the Lawrence Circuit Court had no jurisdiction to act on the question which appellee sought to present by its complaint. This cause is remanded to that court with instructions to dissolve the temporary injunction and for further proceedings in accord with the views expressed herein.

NOTE.—Reported in 149 N. E. 2d 837.