No. 12765

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE DEPARTMENT OF HIGHWAYS
OF THE STATE OF MONTANA,

                    Plaintiff and Appellant,

-vs-

PUBLIC EMPLOYEES CRAFT COUNCIL OF
MONTANA, REPRESENTING THE MONTANA DISTRICT
COUNCIL OF LABORERS, THE JOINT COUNCIL OF
TEAMSTERS NO. 23, THE MONTANA MACHINISTS
COUNCIL, OPERATING ENGINEERS, AND PAINTERS;
VIRGIL BUETTNER AS PRESIDENT OF SAID COUNCIL
AND JAMES L. MURRAY AS SECRETARY-TREASURER
OF SAID COUNCIL,

                    Defendants and Respondents.

---

Appeal from:  District Court of the First Judicial District,
             Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Appellant:

        Jack Holstrom argued, and Daniel J. Sullivan appeared,
        Highway Legal Department, Helena, Montana

    For Respondents:

        Hilley and Loring, Great Falls, Montana
        Benjamin W. Hilley argued and Emilie Loring argued,
        Great Falls, Montana

---

                    Submitted:  November 18, 1974

                          Decided: DEC 9 X 1974

Filed: DEC 9 1974

*Thomas J. Kearney*
                    Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This case involves a strike by approximately 285 teamsters, operating engineers, machinists, laborers, and painters employed by appellant Montana Department of Highways to perform all highway maintenance functions on interstate, primary, and certain secondary roads in the Butte, Great Falls, Missoula, Bozeman, and Helena areas. These employees were responsible for the repair, reconditioning, and general upkeep of roughly 3,000 miles of roads. Their major duties were: removing snow and ice from the traveled surfaces and applying traction materials such as sand and chemicals; patching, resurfacing, and regrading road surfaces; repairing bridges and other highway structures; repairing, replacing, or installing snow fences, culverts, ditches, fences, traffic safety devices, signs and signals, guardrails, and traffic delineators within right-of-way limits; stockpiling traction materials for snow season use; repairing and maintaining roadside rest areas, litter barrels, and campsites; repairing and maintaining state motor pool vehicles, snow plows, road patrols, caterpillars, and other equipment utilized in appellant's maintenance operations; and performing services during emergencies, such as assisting stranded motorists, removing obstructions (overturned vehicles, rock slides, etc.), and providing traffic control. Of necessity, these activities were performed on a 24 hour basis.

The strike by respondent Public Employees Craft Council against appellant occurred on January 21, 1974, and appellant applied to the district court of Lewis and Clark County the same day for a temporary restraining order prohibiting the strike. The district court granted appellant's request and scheduled a show cause hearing to determine whether the strike should be permanently enjoined. Respondent filed a motion to dismiss appellant's complaint, and a show cause hearing thereon was scheduled for March 28, 1974.

At the hearing on the motion to dismiss, the allegations contained in appellant's complaint--including those relating to disruption of highway maintenance programs and injury to the health, safety, and welfare of the traveling public--were admitted. It should be noted here, however, that the issues before us and discussed hereafter in this opinion, do not involve injury to the health, safety and welfare of the traveling public. Nevertheless, the district court granted the motion to dismiss and dissolved the temporary restraining order. Appellant appeals from that order.

There is but one issue: Did the district court err in determining that the maintenance employees of the Montana Department of Highways have the right to strike under Montana's PublicEmployees Collective Bargaining Act?

The portion of the Public Employees Collective Bargaining Act in dispute, section 59-1603(1), R.C.M. 1947, provides:

> "Public employees shall have and shall be protected in the exercise of, the right of self-organization, to form, join or assist any labor organization, to bargain collectively through representatives of their own choosing on questions of wages, hours, fringe benefits, and other conditions of employment and to engage in other <u>concerted activities</u> for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint or coercion." (Emphasis added).

This language is almost idential to that found in the Labor Management Relations Act (Taft-Hartley Act), 1947, which at 29 U.S.C.A., § 157, provides:

> "Employees shall have the right to self-organization, to form, join, or assist in labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other <u>concerted activities</u> for the purpose of collective bargaining or other mutual aid or protection * * *." (Emphasis added).

The phrase "concerted activities" does not appear in any other Montana statute, and this Court has never been called upon to interpret it. The phrase first appeared in the Norris-LaGuardia Anti-Injunction Act, 1932, at 29 U.S.C., § 102; then in the National Labor Relations Act (Wagner Act), 1935, at 49 Stat.449, 452; and again in the Taft-Hartley Act, 1947, 29 U.S.C.A., § 157.

Consequently, some forty years of federal interpretation is behind this language. The United States Supreme Court, as well as innumerable lower federal courts, has consistently held that "concerted activities" includes strikes. Automobile Workers v. O'Brien, 339 U.S. 454, 94 L ed 978, 70 S.Ct. 781; Bus Employees v. Wisconsin Board, 340 U.S. 383, 389, 71 S.Ct. 359, 95 L ed 364; Weber v. Anheuser-Busch, 348 U.S. 468, 75 S.Ct. 480, 99 L ed 546. These cases all involved state legislative attempts to limit the right to strike in the private sector. The Supreme Court found such efforts to be in conflict with the protections afforded by the Taft-Hartley Act and thus unconsitutional under the Supremacy Clause (Article VI) of the United States Constitution. In Bus Employees, the Supreme Court stated:

> "We have recently examined the extent to which Congress has regulated peaceful strikes for higher wages in industries affecting commerce. Automobile Workers v. O'Brien, 339 U.S. 454 (1950). We noted that Congress, in § 7 of the National Labor Relations Act of 1935, as amended by the Labor Management Relations Act of 1947, expressly safeguarded for employees in such industries the 'right * * * to engage in * * * concerted activities for the purpose of collective bargaining or other mutual aid or protection, e.g., to strike.'"

Appellant contends that a different interpretation of "concerted activities" ought to prevail here, since public rather than private employees are involved. The California Supreme Court considered the same proposition in Los Angeles Metropolitan Transit Authority v. Brotherhood of Railroad Trainmen, 8 Cal.Rptr. 1, 355 P.2d 905, 907. In that case the Los Angeles Metropolitan Transit Authority Act created a public authority for transportation of passengers in a four county area in and around Los Angeles. Stats. 1957, ch. 547, as amended by Stats. 1959, ch. 519. Subdivision (c) of section 3.6 of that Act provided that employees of the Transit Authority had the right, among others, to engage "in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." When the employees struck, the Transit Authority sought a declaratory judgment that they were without the legal right to strike because they were public employees.

- 4 -

The court held unequivocally that the grant of the right to engage in "concerted activities" meant the same thing for public employees as it did for private employees, that is, it included the right to strike:

> "When legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation. This rule is applicable to state statutes which are patterned after federal statutes. [Citing cases] Although the cases which have interpreted the italicized words involved private employees, the act before us incorporates the exact language, consisting of 16 words, found in the earlier statutes, and it is unlikely that the same words would have been repeated without any qualification in a later statute in the absence of an intent that they be given the construction previously adopted by the courts."

We think similar standards of judicial construction apply in the present case. For example, section 19-102, R.C.M. 1947, provides:

> "Words and phrases used in the codes or other statutes of Montana are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, as amended, are to be construed according to such peculiar and appropriate meaning or definition." (Emphasis added).

After more than forty years of construction by federal and state courts, "concerted activities" indisputably has become a labor law term, a technical phrase which has "acquired a peculiar and appropriate meaning in law". That meaning includes strikes.

Appellant may wish that the statute read otherwise but this Court is not at liberty to amend our statutes. State v. Midland National Bank, 132 Mont. 339, 343, 317 P.2d 880. This Court concludes that Montana's legislature meant the phrase "concerted activities" to have a meaning identical to that found in analogous statutes of other jurisdictions. To hold otherwise would flaunt a cardinal principle of statutory construction.

This conclusion is reinforced by the fact that employees under Montana's Collective Bargaining Act, Sections 59-1601 through 59-1616, R.C.M. 1947, are nowhere prohibited from striking. Two

other classes of Montana public employees---nurses and teachers--have specific restrictions or bans on their right to strike. See sections 41-2209 and 75-6120(2)(c), R.C.M. 1947.

We comment further that the purposes expressed in the nurses, teachers and public employees acts are similar. As to the nurses, section 41-2201, R.C.M. 1947, enacted in 1969, the purpose was expressed "* * * to encourage the practice of mutually and peacefully agreeing upon the establishment and maintenance of desirable employment practices * * *."

In the teachers act, section 75-6116, R.C.M. 1947, enacted in 1971, the purpose was expressed " * * * to establish procedures which will facilitate and encourage amicable settlement of disputes."

In the public employees act, section 59-1601, R.C.M. 1947, enacted in 1973, the purpose was expressed "* * * to encourage the practice and procedure of collective bargaining to arrive at friendly adjustment * * *."

If the legislature had intended to limit respondent's right to strike, it could have done so expressly as it did with nurses and teachers, since as heretofore shown all this legislation had the same expressed purpose.

Since respondent had the right to strike specifically granted its members by the legislature, the order of the district court dismissing the complaint and dissolving the temporary restraining order is affirmed.

-------------------------------------------------
Chief Justice.

We Concur:

Daly
Howell
John Conway Harrison
Wesley Castles
Justices.

- 6 -