DAVIDSON *v*. MICHIGAN STATE CARPENTERS COUNCIL.

1. Commerce—Construction of Interstate Highways—Labor Relations Act.

> The construction of highways and bridges which themselves constitute essential links in channels of interstate commerce affects commerce within the meaning of the labor management relations act of 1947 (29 USCA, § 152[7]).

2. Labor Relations—National Labor Relations Board—State Court—Jurisdiction.

> A State court, in the absence of violence, is without power or jurisdiction to deal with unfair labor charges within the jurisdiction of the national labor relations board (29 USCA, §§ 141–187).

3. Same—Peaceful Picketing—State Courts—Jurisdiction.

> No cause of action giving a State court jurisdiction to enjoin peaceful picketing was averred by reason of the union's failure to give the employer notice required under State labor mediation act, where dispute related to an activity under the jurisdiction of the national labor relations board (29 USCA, §§ 141–187; CLS 1956, § 423.9).

4. Injunction—Peaceful Picketing—Display of Placards—Freedom of Speech.

> The issuance of injunction forbidding peaceful picketing and the display of placards involves denial by equity of the exercise of a basic constitutional freedom, the exercise of free speech.

---

References for Points in Headnotes

[1] 31 Am Jur, Labor § 190.
  Companies and concerns subject to National Labor Relations Act. 123 ALR 615.
[2, 3, 6] 31 Am Jur, Labor § 572.
  State court's power to enjoin picketing as affected by Labor Management Relations Act.  32 ALR2d 1026.
[4] 31 Am Jur, Labor §§ 434, 514.
[5] 11 Am Jur, Constitutional Law § 319.

5. CONSTITUTIONAL LAW—FREEDOM OF SPEECH.
   The essence of the freedom to speak is the freedom to speak while speech may yet be effective.

6. LABOR RELATIONS—INTERSTATE COMMERCE—STATUTES.
   Policy of confiding primary interpretation and application of congressional rules as to labor disputes affecting interstate commerce to a specific and specially constituted tribunal and prescribed procedure for investigation, complaint and notice, hearing and decision, including judicial relief pending a final administrative order so as to avoid diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies may not be frustrated by a continuation of the practices which led to the enactment of the national labor management relations act (29 USCA, §§ 141–187).

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 27, 1959. (Docket No. 68, Calendar No. 48,184.) Decided June 6, 1959.

Bill by Lester A. Davidson against Michigan State Carpenters Council, United Brotherhood of Carpenters and Joiners of America, Local 871, and Lewis Scarborough, business agent, to enjoin strike and picketing. Temporary injunction issued. Motion to dismiss denied. Defendants appeal. Reversed and remanded for dismissal of bill.

*Carl H. Reynolds,* for plaintiff.

*Rapaport, Siegrist & Miatech,* for defendants.

SMITH, J. Plaintiff is a contractor specializing in highways and highway bridges, presently engaged in construction of US–12 within Calhoun and Jackson counties, Michigan, and in construction of the junction of US–12 and M–78. The total value of the services being performed by plaintiff under contract with the Michigan State highway department exceeds $7,000,000. US–12 is the principal route connecting Detroit, Michigan, and Chicago, Illinois, and has.

been designated a part of the national system of interstate and defense highways. It is stipulated and agreed that plaintiff's operations "affect commerce within the meaning of section 7* of the labor-management relations act of 1947, 29 USCA, § 152(7)." ("Clearly the construction of State highways and bridges, which themselves constitute essential links in channels of interstate commerce, affects commerce within the meaning of the act. We so find." *Madison County Construction Co.*, 115 NLRB 701.)

In connection with the said construction, plaintiff employs 14 carpenters, members of defendant Michigan State Carpenters Council, United Brotherhood of Carpenters and Joiners of America, Local 871, AFL-CIO. On February 19, 1959, defendant Lewis Scarborough, business agent of local 871, placed a sign at plaintiff's yard office and another at the junction of US–12 and M–78, each bearing the legend: "Michigan Carpenters Council on strike against L. A. Davidson Construction Company." Members of local 871 established a picket line around plaintiff's construction site in Calhoun county, which, allegedly, has led to a refusal of all employees, whether members of local 871 or not, to continue work of any sort.

On February 20, 1959, plaintiff filed his bill of complaint in the court below. After identifying the parties and the project it made the following allegations:

"6. This plaintiff is informed, and believes the fact to be, that for some weeks last past, defendant Michigan Carpenters Council, United Brotherhood of Carpenters and Joiners of America has been engaged with negotiations with the Michigan Road Builders' Association in behalf of various contractors engaged in work similar to that undertaken by the plaintiff,

---

* The section 7 here referred to is actually *sub*section 7 of section 2 of the act, but will, where herein and hereinafter quoted from the agreement of the parties, retain the subsection number as employed by them.

in an effort to negotiate a contract between the parties governing relationship between the employees and the members of said defendant Michigan State Carpenters Council, United Brotherhood of Carpenters and Joiners of America. This plaintiff, however, avers that he is not a member of Michigan Road Builders' Association and has no personal knowledge of the results of these negotiations or anything that may have transpired with respect to them.

"7. Plaintiff is informed, and believes the fact to be, that no agreement has been reached as a result of the negotiations recited in paragraph 6. And that he is informed, and believes the fact to be, that defendant Michigan State Carpenters Council, United Brotherhood of Carpenters and Joiners of America has called a strike against all of the contractors who are members of the Michigan Road Builders' Association.

"8. Plaintiff, however, avers that at no time has he received notice required by PA 1939, No 176, as amended, specifically by PA 1949, No 230, being CLS 1956, § 423.9 (Stat Ann 1950 Rev § 17.454[9]), and that all of his information with respect to such dispute and progress concerning it has come from such information as he has been able to get from conversation with various persons involved."

It then described the strike action taken, the displaying of the described placards, and the picketing, which is nowhere alleged to be other than peaceful, concluding with respect thereto:

"11. That, such strike and picketing by the defendants herein is illegal and contrary to the laws of the State of Michigan as hereinabove set forth."

An *ex parte* order was thereupon entered restraining defendants "from engaging in a strike, at or near the project herein described; and further from engaging in any unlawful activity, on the premises or elsewhere, which by their nature are intended, or' which in fact do hinder the progress of said work,

or interfere with those who may be lawfully engaged therewith."

Motion to dismiss the bill of complaint and the temporary restraining order was filed, denying the applicability of the notice requirement (of the Michigan law) to plaintiff's activities which, it was asserted, were governed by the Taft-Hartley act, and denying, in addition, the jurisdiction of the State court in the premises upon the ground that "the labor relations of plaintiff and the activities of the defendants alleged in the bill of complaint are under the exclusive jurisdiction of the national labor relations board and regulated by the labor-management relations act, *supra*."

The motion to dismiss, having come on for hearing, was denied and a preliminary injunction granted on terms substantially identical with those of the temporary restraining order. The reasons therefor do not appear in the appendix, save for the words, "It appearing to the court said motion to dismiss be denied." Appellants are before us upon leave granted.

There is no need to more than summarize what was held in *Town & Country Motors, Inc.,* v. *Local Union No. 328,* 355 Mich 26. We there pointed out (p 30) that "The national labor relations act grants to the NLRB power over labor relations matters 'affecting commerce.' " (In the case before us, as observed, the parties stipulate that plaintiff's operations "affect commerce.") We also pointed out (p 45) that the legislative history of the Taft-Hartley act* made it clear that the Congress had rejected "the theory that employers should be permitted to do precisely what was here done, namely, to apply directly to the courts for injunctive relief against strikes and peaceful picketing for objectives which the act denominated unfair labor practices." (This

---

* 61 Stat 136 (29 USCA, §§ 141–187).—REPORTER.

does not, of course, imply a holding on our part in the case before us that the acts complained of constituted unfair labor practices within the meaning of the Taft-Hartley act.) We concluded (p 45) that "we are without power or jurisdiction to deal with unfair labor charges within the jurisdiction of the NLRB," citing *Guss* v. *Utah Labor Relations Board,* 353 US 1 (77 S Ct 598, 1 L ed 2d 601); *San Diego Building Trades Council* v. *Garmon,* 353 US 26 (77 S Ct 607, 1 L ed 2d 618); and *Amalgamated Meat Cutters* v. *Fairlawn Meat, Inc.,* 353 US 20 (77 S Ct 604, 1 L ed 2d 613).

The appellee does not distinguish this case, or, indeed, argue for reversal thereof. "It simply does not apply to the admitted facts before the court," we are told. In support thereof he cites a generalization from *Weber* v. *Anheuser-Busch, Inc.,* 348 US 468, 480 (75 S Ct 480, 99 L ed 546), preceding the cases above cited, in which it is said that "the labor management relations act 'leaves much to the States, though Congress has refrained from telling us how much.'" Having so said, the United States Supreme Court then held the State court to be without jurisdiction to enjoin the conduct of the union.* In addition, as justifying jurisdiction in our courts in the matter before us, plaintiff cites *Automobile Workers* v. *Russell,* 356 US 634 (78 S Ct 932, 2 L ed 2d 1030), and *Allen-Bradley Local No. 1111* v. *Wisconsin Employment Relations Board,* 315 US 740 (62 S Ct 820, 86 L ed 1154), both cases involving violence, both cases involving the exception to lack of State jurisdiction recognized by us in *Town & Country Motors, supra.* We need not discuss the rationale of the exception, since violence is not even alleged in the matter before us.

---

* The *Weber Case* involved the reliance by the State court, for injunctive purposes, of a general restraint of trade statute.

These, then, are the authorities presented as grounds for the argument that *Town & Country Motors, supra,* "simply does not apply" to the case at bar. The first is a case denying State court jurisdiction, the remainder involving an admitted exception not here factually presented. Comment is unnecessary.

Appellants urge, also, that the bill of complaint does not state a cause of action in the State courts. In such bill the appellee relies exclusively upon the notice provision of the Michigan statutes, as above set forth in detail, concluding that by reason thereof the strike is illegal and unlawful. Yet in *Automobile Workers* v. *O'Brien,* 339 US 454 (70 S Ct 781, 94 L ed 978), the States were held to be without power to qualify the right of employees, in an industry affecting commerce, to strike, the Congress having occupied this field and closed it to the States, and if there remained any doubt as to whether a State might require, in such industries, a strike notice (see *Faribault Daily News, Inc.,* v. *International Typographical Union,* 236 Minn 303 [53 NW2d 36]), such doubts were resolved in the leading case of *Garner* v. *Teamsters Union,* 346 US 485 (74 S Ct 161, 98 L ed 228), discussed in authorities cited in *Town & Country Motors, supra.* There it was held not enough to justify State action, that the conduct sought to be enjoined was violative of State law if such conduct were also the subject of Federal regulation. Here the conduct sought to be enjoined is neither violent nor peripheral to the field of Federal regulation, the "sole allegation    *    *    *    of appellants' misconduct [being] failure of appellants to give" the Michigan statutory notice, and this with respect to operations of appellee which "affect commerce within the meaning of section 7 of the labor management relations act of 1947, 29 USCA, § 152(7)." (The clauses last quoted with respect to misconduct, and commerce,

are quoted from the stipulation entered into between the parties hereto.) It is clear that no cause of action within the jurisdiction of our State courts has been stated.

There is little need to add more, in view of our recent decision in *Town & Country Motors, Inc., supra.* We are constrained again to point out, however, that the issuance of this injunction forbidding peaceful picketing and the display of placards involves denial by equity of the exercise of a basic constitutional freedom, the exercise of free speech. We there held (pp 51, 52):

"Prominent among the abuses was the common inclusion of injunctive language construed to forbid labor's publicizing what it regarded as the essential facts concerning the controversy by means of the placards of the picket line and the dissemination of leaflets therefrom. Constitutional difficulties of the most serious nature (*cf., Thornhill* v. *Alabama,* 310 US 88 [60 S Ct 736, 84 L ed 1093]) cluster around the employment of a court's injunctive process in derogation of our basic freedoms. The denial to labor, in the pursuit of its legitimate objectives, of freedom to acquaint the public at large of its side of the controversy is no less a denial of free speech because the notification may, as well, exert an economic compulsion upon the listener. To say that a 'temporary' order restraining the exercise of a basic constitutional right is harmless to the existence and exercise of the right because the interference is only temporary is to substitute a shabby formula for a basic freedom. With obedience to the 'temporary' injunction, under pain of contempt, the basic right is lost. It is the utterance of the protest of oppression that is intended to quicken the conscience of the community. If we still the tongue at the moment of need we may as well tear it out. The word that is heeded is the word wrung out of the very crisis itself, not the murmurings of reproach after the battle is lost. The

essence of the freedom to speak is the freedom to speak while speech may yet be effective."

The fact that such an injunction is issued *ex parte* means, in simplest terms, that the court employs its awesome process at the behest of only one of the parties to a controversy in such a way as to make the final decision, for all practical purposes, a nullity. Its employment in the strike cases involves the distortion of a simple judicial tool of great antiquity, the injunction, to a perverted use as an instrument of economic policy affecting the lives of thousands. The policy so enunciated is that of a single judge, based upon little or no showing as to the economic and social factors involved. The edict thus enunciated is interpreted, then, by him alone, and enforced through the process of civil and criminal contempt, without the interposition of the traditional safeguards of a jury. Our people have a very limited degree of tolerance for such agglutinations of power, whether wielded by the wearer of crown or robe. The esteem in which courts are held, and our people's respect for the law as an instrument of government were placed in jeopardy by such judicial acts, economically ill-considered, and, in respect of the injunction *ex parte,* both precipitate and one-sided.

The congressional treatment for this open sore in the body politic was the passage of the national act before us. With respect to it the United States Supreme Court held in *Garner v. Teamsters Union,* 346 US 485, 490, 491 (74 S Ct 161, 98 L ed 228), that:

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administra-

tive order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. * * * A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law."

Such policy is not to be frustrated by a continuation of the very practices that led to its enactment.

The orders below are vacated and the cause remanded for entry of an order dismissing the bill of complaint.

BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ. concurred with SMITH, J.

CARR, J. (*concurring*). For the reasons stated in my opinion in *Town & Country Motors, Inc.,* v. *Local Union No. 328,* 355 Mich 26, the present case must be remanded with directions to vacate the injunction issued and grant the motion to dismiss the bill of complaint. The decisions of the United States Supreme Court referred to in the opinion in the case cited are controlling here, the primary question at issue being the interpretation of an act of Congress. See, also, the recent decision of the Federal Supreme Court in *Plumbers, Steamfitters, Refrigeration, Petroleum Fitters, and Apprentices of Local 298, AFL,* v. *County of Door,* 359 US 354 (79 S Ct 849, 3 L ed 2d 872).

DETHMERS, C. J., and KELLY J., concurred with CARR, J.