DETROIT MOTION PICTURE PROJECTIONISTS UNION, LOCAL
199, IATSE, AFL-CIO v EMPLOYMENT RELATIONS COMMISSION

OPINION OF THE COURT

1. ADMINISTRATIVE LAW—ADMINISTRATIVE BOARD'S DECISIONS—COM-
PETENT MATERIAL AND SUBSTANTIAL EVIDENCE.
The Court of Appeals will not disturb a decision by an adminis-
trative board that is based on the board's findings where the
findings are supported by competent, material and substantial
evidence on the whole record (Const 1963, art 6, § 28).

DISSENT BY R. E. NOBLE, J.

2. LABOR RELATIONS—EMPLOYER'S DISCRIMINATORY CONDUCT—ANTI-
UNION MOTIVATION—SUBSTANTIAL BUSINESS JUSTIFICATION.
*The United States Supreme Court has established two principles
of Federal law which provide the Court of Appeals with guid-
ance in the interpretation of Michigan labor relations law: (1) if
it can reasonably be concluded that an employer's discrimina-
tory conduct was "inherently destructive" of important em-
ployee rights, no proof of an antiunion motivation is needed
and the board can find an unfair labor practice even if the
employer introduces evidence that the conduct was motivated
by business considerations, and (2) if the adverse effect of the
discriminatory conduct on employee rights is "comparatively
slight", an antiunion motivation must be proved to sustain the
charge if the employer has come forth with evidence of legiti-
mate and substantial business justification for the conduct.*

3. ADMINISTRATIVE LAW—ADMINISTRATIVE BOARD'S DECISION—COMPE-
TENT MATERIAL AND SUBSTANTIAL EVIDENCE—LEGAL CONCLU-
SIONS.
*The Court of Appeals is bound to accept the findings of fact by*

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 2 Am Jur 2d, Administrative Law §§ 456–458.
[2] 48 Am Jur 2d, Labor and Labor Relations § 544.
[4] 48 Am Jur 2d, Labor and Labor Relations § 613 *et seq.*
[5] 48 Am Jur 2d, Labor and Labor Relations § 1360.
[6] 48 Am Jur 2d, Labor and Labor Relations § 742.
[7] 48 Am Jur 2d, Labor and Labor Relations §§ 626, 634, 874.

the *Employment Relations Commission Board which are supported by competent, material and substantial evidence on the whole record, however, the Court of Appeals is clearly able to review and reject the legal conclusions which the board draws from the facts.*

4. LABOR RELATIONS—REFUSAL OF UNION'S OFFER—DISCHARGE OF UNION EMPLOYEES.

   *An honest economic reason for refusing a union's offer does not justify the drastic step of discharge of the employees belonging to the union since a union has a right to press for high wages.*

5. LABOR RELATIONS—PRIVATELY EMPLOYED WORKERS—STATUTORY REQUIREMENTS—STRIKES—THREAT OF STRIKE.

   *Privately employed workers must comply with certain statutory requirements before they can actually strike, however, before following these procedures, a union is allowed to forewarn an employer of its ultimate intentions to strike should good-faith bargaining fail; therefore a union's threat of a strike does not constitute "unclean hands" where an impasse is reached during good-faith negotiations between the union and an employer (MCLA 423.9; MSA 17.454[9]).*

6. LABOR RELATIONS—TEMPORARY LOCKOUT—TEMPORARY LAYOFF—THREAT OF STRIKE.

   *An employer may temporarily lock out its workers or temporarily lay them off when a strike is threatened or imminent.*

7. LABOR RELATIONS—TEMPORARY REPLACEMENT OF STRIKERS—UNILATERAL TERMS AND CONDITIONS—PERMANENT DISCHARGE.

   *An employer may temporarily replace striking workers, or may, in some situations, impose certain unilateral terms and conditions of employment; however, an employer, facing an impasse in bargaining and fearing a union strike, may not permanently discharge employees represented by a union.*

Appeal from Employment Relations Commission. Submitted January 7, 1976, at Detroit. (Docket No. 23702.) Decided April 6, 1976. Leave to appeal applied for.

The Detroit Motion Picture Projectionists Union, Local 199, IATSE, AFL-CIO, filed an unfair labor practice charge with the Employment Relations Commission against the Ninety-Six Grand Corpo-

ration, Sol Krim, Leonard Krim, Harry Krim and Mac Krim, doing business as Krim Enterprises. The Employment Relations Commission rendered a decision for defendants. Plaintiff appeals. Affirmed.

*Miller, Klimist, Cohen, Martens & Sugerman, P. C.* (by *Sheldon L. Klimist* and *Murray A. Gorchow),* for plaintiff.

*Honigman, Miller, Schwartz* and *Cohn* (by *Charles H. Tobias),* for defendants.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for the Employment Relations Commission.

Before: J. H. GILLIS, P. J., and QUINN and R. E. NOBLE,* JJ.

QUINN, J. Plaintiff appeals from a decision by Michigan Employment Relations Commission which reversed a decision by an administrative law judge that defendants had committed an unfair labor practice. The decisive issue is whether the decision appealed from is supported by competent, material and substantial evidence on the whole record, Const 1963, art 6, § 28.

By oral contract, defendants employed Robert Holmes as a projectionist for a new theater operated by them. Holmes was a member of plaintiff and the oral employment agreement was that Holmes would work two weeks while defendants and plaintiff worked out a contract. Holmes was paid union scale wages. Plaintiff sent George Klokis to defendants as a relief projectionist and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

he worked as such. After two weeks no contract was reached and the projectionists were placed on day to day employment.

Plaintiff demanded union scale wages for Holmes and Klokis. Defendants maintained it was economically impossible for them to pay union scale wages on the basis of box office receipts. No contract was ever reached between plaintiff and defendants, and defendants finally discharged Holmes and Klokis. At the request of plaintiff's agent, defendants formalized that discharge by letter dated January 31, 1973. Thereafter, plaintiff filed an unfair labor practice charge under MCLA 423.16; MSA 17.454(17).

MERC found no per se unlawful activity, that there was no antiunion motivation, that only incidental harm to employee rights was involved, and that there was sound economic basis for defendants' actions. From our review of the record, these findings are supported by competent, material and substantial evidence on the whole record. *NLRB v Great Dane Trailers*, 388 US 26; 87 S Ct 1792; 18 L Ed 2d 1027 (1967), supports the decision of MERC.

Affirmed, with costs to defendants.

J. H. GILLIS, P. J., concurred.

R. E. NOBLE, J. *(dissenting)*. I must respectfully dissent. I believe that doctrines limiting this Court's review of Michigan Employment Relations Commission (MERC) decisions should not be invoked to let stand a clearly erroneous legal conclusion.

Defendant 96 Grand Corporation, owned by a four-person partnership named Krim Enterprises, leased a movie theater in Farmington and approached plaintiff, a union representing movie

projectionists, with an invitation to bargain over projectionists' terms and conditions of employment. In December, 1972, the parties reached a temporary oral agreement concerning wages to be paid during the negotiations for a final contract. The union supplied a projectionist and relief man. The union projectionist installed the projection equipment and ran the projector for about four weeks.

After weeks of bargaining, the parties reached an impasse, with the union refusing to go below the area union scale and the theater economically unable to pay the scale. At a January 30, 1973, meeting, after the employer notified the union that one of the theater owners would assume the projectionist's duties, the union threatened to pull its members out of the theater. Defendant responded by stating that the union members' services were no longer desired.

The owners subsequently told the employees that they were discharged. At the request of the union negotiator, one of the owners, after consultation with an attorney, delivered a written notice of discharge to the projectionist. The projectionist's duties were then performed by one of the partners, possibly aided by a nonunion projectionist.

Plaintiff filed an unfair labor practice charge with MERC, under MCLA 423.16; MSA 17.454(17), claiming that defendant's dismissal of the employees constituted interference with protected union activity and discrimination based on union status. An administrative law judge agreed that the dismissal was improper, and ordered reinstatement of the two employees, with back pay. On appeal, the MERC Board, with one member dissenting, reversed the administrative law judge and dismissed the unfair labor practice charge. The

board later reaffirmed and clarified its initial opinion with a second opinion.

We accept, as we must, certain factual findings made below that are supported by competent, material and substantial evidence. *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974). First, the parties had reached an impasse in negotiations. Second, there was in fact a dismissal of the employees rather than a suspension, although the union representatives may have tacitly supported the dismissal. Third, the dismissal was founded on economic reasons, with no hint of antiunion animus.

Given these factual findings, we search for the pertinent labor law doctrine. Both parties and the MERC Board refer this Court to *NLRB v Great Dane Trailers, Inc,* 388 US 26; 87 S Ct 1792; 18 L Ed 2d 1027 (1967). *Great Dane,* although establishing Federal law, provides this Court with guidance in the interpretation of Michigan labor relations law. See *Rockwell v Crestwood School District Board of Education,* 393 Mich 616, 635–638; 227 NW2d 736 (1975).

The United States Supreme Court held:

"First, if it can reasonably be concluded that the employer's discriminatory conduct was 'inherently destructive' of important employee rights, no proof of an antiunion motivation is needed and the Board can find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business considerations. Second, if the adverse effect of the discriminatory conduct on employee rights is 'comparatively slight,' an antiunion motivation must be proved to sustain the charge *if* the employer has come forward with evidence of legitimate and substantial business justifications for the conduct. Thus, in either situation, once it has been proved that the employer engaged in

discriminatory conduct which could have adversely affected employee rights to *some* extent, the burden is upon the employer to establish that he was motivated by legitimate objectives since proof of motivation is most accessible to him." 388 US at 34; 87 S Ct at 1798; 18 L Ed 2d at 1035.

The MERC Board concluded that, given the "unique facts" of this case, the employer's conduct was not "inherently destructive" of important employee rights and, hence, not an unfair labor practice under either of the *Great Dane* principles. The "unique facts" advanced that allegedly removed the dismissal from the "inherently destructive" category and into the "comparatively slight" category were: (1) the employees were only temporary and provided by a union hiring hall, (2) the defendant could honestly not afford the demands of the union, nor would the union lower the demands, (3) the union, by requesting a written notice of discharge and by threatening to strike, engaged in "'unclean hands' bargaining," and (4) the projectionists were replaced by one of the theater owners, not by a nonmanagement person.

While we are bound to accept the MERC Board's findings of fact, *Detroit Symphony Orchestra, supra,* we are clearly able to review and reject the legal conclusions the board draws from those facts. The Michigan Constitution, cited by the majority, makes this clear:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. *This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law;* and, in cases in which a

hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. (Emphasis added.)

I cannot agree that these "unique facts" warrant a departure from the first *Great Dane* principle of law. The employer's action here, even if motivated by economic reasons and even in the total absence of animus, was "inherently destructive" of important employee rights.

There is no more important right of an employee than the right "to negotiate or bargain collectively with their employers through representatives of their own free choice". MCLA 423.8; MSA 17.454(8). There is no clearer "destruction" of that right than a permanent dismissal of all members of the bargaining unit. The discharge of employees because they are represented by a union that demands the union rate destroys union activity because it eliminates the union members.

The fact that the two employees were supplied by a union hiring hall and were initially compensated on an interim basis does not change their status as "employees" under MCLA 423.2(e); MSA 17.454(2)(e). They were "individual[s] whose work has ceased as a consequence of, or in connection with, any current labor dispute". The discharged workers had been paid for four weeks by defendant and their relationship with defendant terminated as a consequence of the labor dispute.

Were an employer able to avoid the responsibilities imposed by MCLA 423.1, *et seq.;* MSA 17.454(1), *et seq.,* by dubbing all of his laborers "temporary workers" whose status as employees is conditioned on the employer's caprice in accepting proposed labor agreements, there would be little protection given to labor organizations. Employers

could then summarily discharge workers and deny them the benefits of their protected activities.

The fact that there was an honest economic reason for refusing the union's offer does not justify the drastic step of discharge, nor does the union's threat of a strike constitute "unclean hands". The union has a right to press for high wages and to threaten to strike.[1] These are legitimate weapons in economic warfare.

"[T]he use of economic pressure by the parties to a labor dispute is not a grudging exception to some policy of completely academic discussion enjoined by the Act; it is part and parcel of the process of collective bargaining." *NLRB v Insurance Agents' International Union, AFL-CIO,* 361 US 477, 495; 80 S Ct 419, 430; 4 L Ed 2d 454, 468 (1960).

An employer also has a considerable arsenal of bargaining armaments, although the chosen response to the threat of the strike and the wage demands was excessive in this case. Assuming compliance with MCLA 423.9; MSA 17.454(9) when it is applicable,[2] an employer may temporarily lock out the workers or temporarily lay them off when a strike is threatened or imminent, *American Ship Building Co v NLRB,* 380 US 300; 85 S Ct 955; 13 L Ed 2d 855 (1965).

An employer may, at a minimum, temporarily replace striking workers, *e.g., NLRB v Erie Resi-*

---

[1] Under Michigan labor law, before privately employed workers can actually strike, they must comply with the requirements of the labor mediation act found in MCLA 423.9; MSA 17.454(9). Before following these procedures, the union is allowed to forewarn the employer of its ultimate intentions should good faith bargaining fail. Even if we assume that this statute is not preempted in this case by the Federal Labor Management Relations Act, 1947, 29 USCA §§ 141–187, the union has done no more than is permitted under the Michigan statute. *See Davidson v Michigan State Carpenters Council,* 356 Mich 557; 97 NW2d 11 (1959).

[2] *See* n 1, *supra.*

*stor Corp,* 373 US 221; 83 S Ct 1139; 10 L Ed 2d 308 (1963), or may, in some situations, impose certain unilateral terms and conditions of employment, *e.g., NLRB v Katz,* 369 US 736; 82 S Ct 1107; 8 L Ed 2d 230 (1962).[3] However, as we have concluded, an employer, facing an impasse in bargaining and fearing a union strike, may not permanently discharge employees represented by a union. *C.f., Cooper v Sherman,* 63 Mich App 234; 234 NW2d 464 (1975).

I conclude that defendant's discharge of the employees was unlawful and violative of MCLA 423.16; MSA 17.454(17). I would remand to MERC for a determination of the proper remedy, noting that MERC has considerable discretion in assessing the harm done and the entitlements of the parties.

---

[3] We refer particularly to n 12 in the *Katz* opinion and the text accompanying the note. *NLRB v Katz,* 369 US 736, 745, n 12; 82 S Ct 1107, 1113, n 12; 8 L Ed 2d 230, 237, n 12 (1962).