METROPOLITAN DETROIT PLUMBING & MECHANICAL
CONTRACTORS ASSOCIATION v EMPLOYMENT SECURITY
COMMISSION

Docket No. 72928. Argued April 9, 1986 (Calendar No. 1). Decided
   July 22, 1986.

   Certain members of the United Association of Journeymen and
      Apprentices of the Plumbing and Pipefitting Industry of the
      United States and Canada, AFL-CIO, sought unemployment com-
      pensation after the Metropolitan Detroit Plumbing & Mechani-
      cal Contractors Association called a lockout by association
      employers against union members in response to "selective
      strike action" by the union against two association employers.
      None of the claimants was employed by either of these employ-
      ers. A hearing referee held that the claimants were disqualified
      from receiving benefits because their unemployment resulted
      from a labor dispute in which they were directly involved. The
      Employment Security Commission Board of Review reversed,
      holding that the workers were entitled to compensation on the
      ground that they were unemployed solely because association
      members who were not experiencing strike activity honored an
      internal agreement to lock out the union because the union
      had "walked out" on other members. The Wayne Circuit Court,
      Victor J. Baum, J., affirmed. The Court of Appeals, CYNAR, P.J.,
      and V. J. BRENNAN and DEMING, JJ., affirmed, holding that
      although the claimants were directly involved in a labor dis-
      pute, they were eligible for compensation because they had not
      received the statutory lockout notice (Docket No. 55637). The
      Supreme Court remanded the case to the Court of Appeals for
      consideration as on rehearing granted whether federal case law
      had preempted the notice requirement of the Michigan labor
      mediation act. 417 Mich 869 (1983). After remand, the Court of
      Appeals reaffirmed by order its earlier decision. The Supreme

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 78-85.

General principles pertaining to statutory disqualification for unem-
   ployment compensation benefits because of strike or labor dis-
   pute. 63 ALR3d 88.

Application of labor dispute disqualification for benefits to locked
   out employee. 62 ALR3d 437.

Court again remanded the case to the Court of Appeals for evaluation of the preemption issue. 417 Mich 1100.17 (1983). After the second remand, the Court of Appeals, CYNAR, P.J., and HOOD and BRENNAN, JJ., reaffirmed its earlier opinion, holding that the states were free to fashion their own criteria of eligibility for unemployment compensation (Docket No. 73949). The association appeals.

In a unanimous opinion by Justice ARCHER, the Supreme Court *held:*

The notice provision of the Michigan labor mediation act is preempted by the National Labor Relations Act, and thus may not be construed to permit payment of unemployment compensation in this case. A lockout is one form of labor dispute which will disqualify a worker from receiving unemployment benefits where, as in this case, the unemployment was due to a labor dispute in which the worker was directly involved. The association was not required to give a ten-day notice before instituting the lockout, and the employees are not entitled to unemployment compensation.

Reversed.

113 Mich App 439; 317 NW2d 649 (1982) reversed.

UNEMPLOYMENT COMPENSATION — LABOR MEDIATION — NOTICE — FEDERAL PREEMPTION.

The notice provision of the Michigan labor mediation act is preempted by federal labor law and should not have been construed to permit payment of unemployment compensation in a case in which the employees claiming eligibility for compensation were directly involved in a labor dispute which resulted in a lockout (29 USC 158[d]; MCL 423.9[a]; MSA 17.454[9][a]).

*Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *Robert J. Battista* and *Gregory S. Muzingo*), for the plaintiff.

*Fred L. Harris, P.C.,* for defendants Beauvais, et al.

Amicus Curiae:

*Clark, Klein & Beaumont* (by *John F. Burns, J. Walker Henry,* and *Timothy M. Koltun*) for Employers' Unemployment Compensation Council.

ARCHER, J. There are two issues before this Court. First, is the notice provision of Michigan's labor mediation act preempted by the National Labor Relations Act? Second, if state law is preempted, and this Court is precluded from fashioning a remedy based on state labor law, what effect does preemption have on the parties' dispute concerning payment of unemployment compensation? We find that since the notice provision of the labor mediation act is preempted, this preemption prohibits the construction of the Employment Security Act to permit payment of compensation in this case.

The dispute between the parties is whether some sixty employees were disqualified from receiving unemployment benefits from the Michigan Employment Security Commission from July 31, 1974, through August 22, 1974. The employers contested payment of benefits, charging that the claimants were involved in a labor dispute and therefore disqualified from receiving the benefits.

I

Plaintiff, the Metropolitan Detroit Plumbing & Mechanical Contractors Association, represents some sixteen employers in the business of plumbing and mechanical contracting in metropolitan Detroit. The association negotiates for its members in collective bargaining with members of Local Union 636 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO. The union is the collective bargaining agent for the employees. The association itself employed none of the employees involved in this case, rather it was the association members who were the employers. The association and the union

began negotiations for a new contract in March, 1974. In a letter dated March 19, 1974, the union notified the association of its intent to terminate the expiring 1972-74 contract on May 31, 1974, and of the changes the union desired in the contract terms. In addition, the union stated: "It is also the purpose of this letter to serve written notice of proposed modification, in accordance with the provisions of the Taft Hartley Act."[1] The union also sent letters to the Federal Mediation and Conciliation Service and to the State of Michigan Labor Mediation Board on March 19, 1974, to notify officials that the contract would terminate.

The parties were still negotiating when the contract expired on May 31, 1974. They agreed that the previous contract would remain in effect on a day-to-day basis while negotiations continued. On July 1, 1974, two employers, the Lorne Company and the Donald Miller Company, reported to the association that union members were walking off job sites. At a special board of directors meeting called for July 1, the association's board adopted a resolution giving the association's negotiating committee the power to execute "in behalf of the association any action required including a lock-out, to cope with Pipefitters Local 636 during current negotiations."

Later in July, the same two employers reported that they were subject to "selective strike action" and that their work was subject to slow-downs. The Donald Miller Company reported that it was unable to get tradesmen to report to a job site, despite the request the company made to the union.[2]

---

[1] Labor Management Relations Act, 29 USC 141-197.

[2] During a lengthy negotiation session on July 29, 1974, little progress was made on the issues. Thereafter, the association notified the union that it was terminating the prior understanding which had been to continue the previous contract on a day-to-day basis.

The employers' association was of the opinion that the union had engaged in strikes against its two members; so the association called a lockout, as authorized in its constitution and in the power of attorney executed by each member. According to the power of attorney, a strike against one association member is a strike against all.

About July 31, 1974, the association's lockout of the union members occurred. Each of the union members involved in this case reported to work until his employer notified him on the job on July 31, 1974, that he was laid off or that his employment was terminated. There was work remaining for each union member when he became unemployed. Following the association action, the union picketed the plants and job sites of the association members. None of the union claimants in this appeal was an employee of the Lorne Company or the Donald Miller Company, the employers who alleged concerted labor activity against them.

A new tentative agreement between the union and the association was reached on August 21, 1974. Most of the claimants involved in this appeal were recalled to work by their respective employers between August 22 and August 26, 1974. The locked-out employees applied to the Employment Security Commission for unemployment compensation benefits, but their applications were denied.[3] The union appealed to a hearing referee who upheld the commission's decision.[4]

The Court of Appeals has explained the referee's

[3] One of the defendants, Paul G. Beauvais, was named to represent the claimants who belong to the union.

[4] The referee who heard the consolidated appeals on defendants' claims took testimony regarding the contract negotiations and the eventual lockout and rendered identical decisions on the employees' claims since the individual factual variations were not of such a significant nature as to alter the ultimate decision in any one appeal.

decision, as well as the board of review's decision (by a vote of two to one) to reverse:

> The referee held, under the above facts, that the unemployment of the claimants was the result of a labor dispute in which the claimants were directly involved, so that they fell within the disqualification provisions of the Employment Security Act, MCL 421.29(8)(a)(ii); MSA 17.531(8)(a)(ii).
>
> On appeal from the referee's decision, the board of review reversed. After noting that the statute was enacted to protect those who are involuntarily unemployed, who are capable of working but are prevented from doing so by others, the board considered the effect of a lockout on this statutory purpose. The board held that, in Michigan, an employer seeking to avoid payment of unemployment benefits on the basis of a labor dispute must prove that the employee is disqualified. The board also held that "a lockout situation is not automatically entitled to a designation as a labor dispute in active progress." In the case at bar, the board concluded that the claimants were unemployed solely because the members of the employers' association who were not experiencing strike activity honored their internal agreement to lock out the union because the union had "walked out" on two other employers. Thus, the claimants were entitled to compensation. [*Metropolitan Detroit Plumbing Ass'n v Employment Security Comm*, 113 Mich App 439, 442-443; 317 NW2d 649 (1982).]

The Wayne Circuit Court affirmed.[5]
In the Court of Appeals, the parties continued to

---

[5] The trial court stated:

[A]t the time of the lockout none of the employees seeking unemployment benefits was on strike or in a slowdown. In fact, no finding has been made to the effect that any employees of any member of the Association was on strike. That assertion is made only by the employers, and has not been adopted by any of the fact finders below.

litigate the issue whether the employees were disqualified from receiving unemployment benefits under MCL 421.29(8); MSA 17.531(8) by reason of direct involvement in a labor dispute. See *Smith v Employment Security Comm,* 410 Mich 231; 301 NW2d 285 (1981).[6] The Court explained that, under *Smith,* the affected employees could fall within the "labor dispute" disqualification of MCL 421.29(8); MSA 17.531(8). It stated that "[t]he individual claimants were directly involved in the 'labor dispute' by reason of the fact that they were subjects of the lockout at their own place of employment."

The Court nevertheless concluded that the affected employees were eligible for benefits. It explained that a failure to observe a statutory notice provision rendered the lockout unlawful, and stated further: "We cannot allow plaintiff to benefit from such wrongdoing."

> It appears from the foregoing that the claimants are ineligible for unemployment benefits under the rationale of *Smith.* There is, however, an important factor distinguishing the instant case. As claimants point out, the lockout went into effect with less than one day's notice to the claimants. This was a violation of MCL 423.9; MSA 17.454(9), which requires a minimum of ten days notice before instituting a lockout. MCL 423.22; MSA 17.454(23) specifically provides that institution of a lockout without provision of the requisite notice is unlawful.
>
> Under *Smith,* a lockout is clearly a disqualifying "labor dispute" when used as a bargaining tactic to gain a concession from employees. When legitimately instituted with proper advance notice, the lockout gives employees a choice within the bar-

[6] See also, generally, Anno: *Unemployment compensation: Application of labor dispute disqualification for benefits to locked out employee,* 62 ALR3d 437.

gaining process. They may choose [1] to yield to the employer's demands, [2] to offer some concession in hope of avoiding the lockout, or [3] to accept the condition of unemployment where the employee finds the first two alternatives unacceptable. In this sense, an employee who is unemployed as a result of a lockout is "voluntarily" unemployed. He has chosen his course.

Because the lockout in the instant case was instituted without the requisite notice, or any meaningful notice, the employees were precluded from making a choice among the three alternatives discussed. Thus, the employees in the instant case were involuntarily unemployed. As such, they are entitled to unemployment compensation since they fall within the purpose of the Employment Security Act to provide for the involuntarily unemployed. They are not disqualified by reason of their involvement in the lockout because the lockout was not legitimately instituted as contemplated by the Legislature. Put another way, the disqualification of MCL 421.29(8); MSA 17.531(8) applies to a situation where a lockout has been properly instituted, but in the instant case the lockout was instituted in a manner forbidden by the Legislature. We cannot allow plaintiff to benefit from such wrongdoing.

Our conclusion is supported by the discussion in *Smith* which indicates that if the lockout therein had been instituted for the purpose of avoiding the payment of unemployment benefits during an impending layoff, the lockout would not be considered a manifestation of a labor dispute. See *Smith, supra,* 266-267.

For the reasons set forth above, the decision of the trial court that the claimants are not disqualified from receiving unemployment benefits is affirmed. [*Metropolitan Plumbing, supra,* pp 444-446.]

The association then moved in the Court of Appeals for a rehearing. It argued that *UAW-CIO v O'Brien,* 339 US 454; 70 S Ct 781; 94 L Ed 978

(1950), had already held that MCL 423.9; MSA 17.454(9) was preempted by federal labor law.[7] The Court of Appeals denied rehearing without explanation.

The association applied to this Court for leave to appeal. To obtain a Court of Appeals evaluation of the *O'Brien* preemption issue, we remanded the case to the Court of Appeals for consideration as on rehearing granted. 417 Mich 869 (1983). The Court of Appeals responded with an order reaffirming its earlier decision:

> This Court having reviewed the entire matter on briefs submitted and thereafter, having concluded that its original position as set forth in the February 18, 1982, opinion fairly covers the issues and clearly sets forth our position therein, now, therefore, upon reconsideration, or as on rehearing granted, we affirm the trial court's judgment in the manner as set forth in our February 18, 1982, opinion.

The association again applied for leave to appeal to this Court, and we again remanded this case to the Court of Appeals to obtain that Court's evaluation of the *O'Brien* preemption issue:

> Pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, the case is remanded on September 21, 1983, to the Court of Appeals for reconsideration whether the notice requirements of MCL 423.9; MSA 17.454(9) are preempted by the notice provisions of the National Labor Relations Act for purposes of determining eligibility for state unemployment compensation. [UAW-]*CIO v O'Brien,* 339 US 454; 70 S Ct 781; 94 L Ed 978 (1950).

---

[7] The filing of that motion marked a turning point in this case. The prior proceedings had focused almost exclusively on the MCL 421.29(8); MSA 17.531(8) labor dispute disqualification. The subsequent proceedings have focused almost entirely on whether the MCL 423.9(a); MSA 17.454(9)(a) notice requirement is preempted.

The Court of Appeals then issued a second order adhering to its earlier opinion. It relied on three cases, including *New York Telephone Co v New York Dep't of Labor,* 440 US 519; 99 S Ct 1328; 59 L Ed 2d 553 (1979), for the proposition that "states are free to fashion their own criteria for unemployment compensation eligibility":

> This Court having given due consideration to the matter, we conclude that the use of the notice provision for this purpose does not offend the doctrine of federal labor law preemption, as states are free to fashion their own criteria for unemployment compensation eligibility. *New York Tel Co v New York Labor Dep't,* 440 US 519; 99 S Ct 1328; 59 L Ed 2d 553 (1979); *Florida AFL-CIO v State Dep't of Labor,* 676 F2d 513 (CA 11, 1982); *Hawaiian Tel Co v State of Hawaii,* 614 F2d 1197 (CA 9, 1980), *cert den* 446 US 984; 100 S Ct 2965; 64 L Ed 2d 840 (1980). Having so resolved the question, we affirm the trial court's judgment in the manner as set forth in our February 18, 1982, opinion.[8]

The association has applied for the third time to this Court for leave to appeal.

---

[8] The Court of Appeals was clearly correct to the extent that it cited these cases for that proposition. Unfortunately, that proposition does not resolve this case. No eligibility criteria for unemployment compensation are challenged here. The criterion that is relevant to these claimants is the alleged involvement in a labor dispute. The Michigan Legislature has decided, as *New York Telephone Co* held it may, that such involvement disqualifies a claimant from receiving benefits. This Court has construed such involvement to include lockouts. See *infra,* pp 424-425 for a discussion of *Smith v Employment Security Comm,* 410 Mich 231; 301 NW2d 285 (1981). The Court of Appeals has added an additional gloss by holding that the lockouts must be legal. Even assuming that this additional statutory construction is permissible, the fact remains that the legality of the lockout must be determined by reference to labor law provisions, which define when a lockout may occur. The Court of Appeals chose to refer to the preempted Michigan notice requirement even though, as a labor law provision, that requirement is invalid.

II

Michigan's labor mediation statute, MCL 423.9; MSA 17.454(9), provided at the time of the dispute:

> No strike or lockout shall take place or be put into effect until and unless each of the steps have been taken and the requirements complied with as provided in this section.[9]

The statute, in subsection 9(a), further provided in pertinent part that notice be given in the event of a strike or lockout:

> In the event the parties thereto are unable to settle any labor dispute, the employees or their representatives, in the case of impending strike, or the employer or his agent, in the case of an impending lockout, shall serve notice of such dispute together with a statement of the issues involved upon the board and the other party to the dispute. Said notice may be served . . . or sent . . . not less than 10 days before the strike or lockout is to become effective . . . .[10]

In addition, MCL 423.22(a)(1); MSA 17.454(23)(a)(1) provided:

---

[9] 1949 PA 230.

The quoted portion of the statute now reads:
   A strike or lockout shall not take place or be put into effect until and unless each of the steps are taken and the requirements complied with as follows . . . .

[10] 1949 PA 230.

The quoted portion of the statute now reads:
   If the parties thereto are unable to settle any labor dispute, the employees or their representatives, in the case of impending strike, or the employer or his agent, in the case of an impending lockout, shall serve notice of the dispute together with a statement of the issues involved upon the commission and the other party to the dispute. The notice may be served . . . or sent . . . not less than 10 days before the strike or lockout is to become effective.

It shall be unlawful for an employer to engage in a lockout or for a labor organization to engage in or instigate a strike . . . without first having served notice as required in section 9 . . . .[11]

Plaintiff argues that Michigan's notice provision was preempted by the notice provisions of the National Labor Relations Act, as amended, 29 USC 151 *et seq.*

The doctrine of federal preemption in labor law is complex and the literature on the doctrine is extensive.[12]

Justice Frankfurter stated in *San Diego Building Trades Council v Garmon,* 359 US 236, 241; 79 S Ct 773; 3 L Ed 2d 775 (1959):

The extent to which the variegated laws of the several States are displaced by a single, uniform, national rule has been a matter of frequent and recurring concern. As we pointed out the other day, "the statutory implications concerning what has been taken from the States and what has been left to them are of a Delphic nature, to be trans-

---

[11] 1965 PA 282.

The quoted portion of the statute now reads:
    It shall be unlawful for an employer to engage in a lockout or for a labor organization to engage in or instigate a strike without first having served notice as required in section 9.

[12] Among the major articles are the following: Cox, *Recent developments in federal labor law preemption,* 41 Ohio St L J 277 (1980); Lesnick, *Preemption reconsidered: The apparent reaffirmation of* Garmon, 72 Colum L R 469 (1972); Cox, *Labor law preemption revisited,* 85 Harv L R 1337 (1972); Come, *Federal preemption of labor-management relations: Current problems in the application of* Garmon, 56 Va L R 1435 (1970); Peck, *Accommodation and conflict among tribunals: Whatever happened to preemption?,* Labor Law Developments, 1969, Fifteenth Annual Institute, Southwestern Legal Foundation, 121; Michelman, *State power to govern concerted employee activities,* 74 Harv L R 641 (1961); Wellington, *Labor and the federal system,* 26 U Chi L R 542 (1959); Meltzer, *The Supreme Court, Congress, and state jurisdiction over labor relations: I,* 59 Colum L R 6; *II,* 269 (1959); Hays, *State courts and federal preemption,* 23 Mo L R 373 (1958).

lated into concreteness by the process of litigating elucidation." [Citation omitted.]

The basis of the preemption doctrine is the Supremacy Clause of US Const, art VI.[13] The United States Supreme Court has stated that the grant of power to Congress to regulate commerce could exclude any concurrent power in the states.[14] The right of Congress, under the Commerce Clause, to legislate in areas of labor relations has long been recognized by the courts.[15]

The National Labor Relations Act grants to the NLRB power over labor relations matters "affecting commerce." Plaintiff association and its constituent members maintain that they are subject to the jurisdiction of the act, and the affected employees have taken a similar position.[16]

Where the industry is one in which a labor

[13] The Supremacy Clause states in pertinent part:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

[14] The Commerce Clause, US Const, art I, § 8, grants to Congress power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." The United States Supreme Court articulated the grant of power to Congress in *Gibbons v Ogden,* 22 US (9 Wheat) 1; 6 L Ed 23 (1824). See also Tribe, American Constitutional Law, pp 376-379.

[15] *NLRB v Jones & Laughlin Steel Corp,* 301 US 1; 57 S Ct 615; 81 L Ed 893 (1937).

[16] During the period relevant to this dispute, the association members in the conduct of their business had gross revenues in excess of $500,000 and had goods and materials valued at more than $50,000 transported and delivered to their businesses from points outside Michigan. Thus the NLRB's jurisdictional standards were met, the association asserts. In addition, the affected employees have taken a similar position: In answering the association motion for rehearing in the Court of Appeals, the employees appended, and relied in part upon, a federal unfair labor practice charge that their union had filed against the association. In addition, the NLRB determined the association is an employer engaged in commerce within the meaning of the

dispute "affects commerce" and Congress has legislated on the matter, state law may be preempted. Congress has specifically stated the notice requirements to be followed by the party to the collective bargaining agreement who initiates action to change the terms of the agreement.

The National Labor Relations Act, 29 USC 158(d), provides in pertinent part

> [t]hat where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—
>
> (1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;
>
> (2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;
>
> (3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and
>
> (4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the

act, 29 USC 152(2), 152(6) and 152(7). The union is a labor organization within the meaning of 29 USC 152(5), the NLRB stated.

expiration date of such contract, whichever occurs later . . . .

In analyzing the preemption issue, the Court in *San Diego Building Trades Council, supra,* p 244, stated:

When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.[17]

Therefore, we must determine whether federal labor law preempts a provision of state labor law.

In *O'Brien, supra,* the United States Supreme Court held that the strike-notice provision of MCL 423.9(a); MSA 17.454(9)(a)[18] was preempted by the notice provisions of the National Labor Relations Act, as amended, 29 USC 151 *et seq.*

In *O'Brien,* the union struck its employer, Chrysler Corporation, without complying with Michigan's statute which called for a notice to be given "[i]n the event the parties . . . are unable to settle any dispute . . . ." The notice was to be followed by mediation, and if that was unsuccessful, by a strike vote within twenty days, with a majority required to authorize a strike.

Under the NLRA, the *O'Brien* Court noted, the prescribed notice can be given sixty days before the contract termination or modification. § 8(d). The Court observed that Congress safeguarded the

[17] Cases dealing with labor law preemption have involved activity that is protected or arguably protected by § 7 of the NLRA or activity that is prohibited or arguably prohibited under § 8 of the NLRA. *Id.,* p 245.

[18] The text of the statute at the time of appellants' strike in 1948 is quoted in *O'Brien, supra,* p 455, n 1. See *ante* at 417 and ns 9, 10 for subsequent changes in the statute.

exercise by employees of "concerted activities" and expressly recognized the right to strike. After quoting the federal prerequisites to the right to strike, the Court stated: "None of these sections can be read as permitting concurrent state regulation of peaceful strikes for higher wages. Congress occupied this field and closed it to state regulation." *Id.*, p 457.

The *O'Brien* Court went on to observe that "[t]he federal Act thus permits strikes at a different and usually earlier time than the Michigan law; and it does not require majority authorization for any strike."[19] *Id.*, p 458.

Because the state statute conflicted with the federal act, the *O'Brien* Court found that the state legislation must yield. "A state statute so at war with federal law cannot survive." *Id.*, pp 458-459.

Preemption of state law by the NLRA was recognized and applied in *Davidson v Michigan Carpenters Council,* 356 Mich 557; 97 NW2d 11 (1959). The legality of the association's lockout must therefore be evaluated in terms of federal, not state, law.[20]

---

[19] In addition, the *O'Brien* Court found that the bargaining unit established in accord with federal law may be inconsistent with the unit that state regulation required.

[20] Under federal law, members of a multiemployer bargaining unit are permitted to defensively lock out a union in response to a whipsaw strike. In *NLRB v Truck Drivers Union,* 353 US 87; 77 S Ct 643; 1 L Ed 2d 676 (1957), the United States Supreme Court held that a lockout, instituted by a multiemployer bargaining association, after the union began a whipsaw strike, was not an unfair labor practice, but rather a lawful defense to the strike which imperiled the employers' common interest. The court defined "whipsawing" as the process of striking one at a time the employer members of a multiemployer association. *Id.*, p 90, n 7. The United States Supreme Court has broadened the scope of lockouts protected under the National Labor Relations Act. See also *American Ship Building v NLRB,* 380 US 300; 85 S Ct 955; 13 L Ed 2d 855 (1965). Lockouts are also the subjects of vast commentary. Baird, *Lockout law: The Supreme Court and the NLRB,* 38 Geo Wash L R 396 (1970); Feldesman & Koretz, *Lockouts,* 46 Boston U L R 329 (1966); Freilicher, *The supportive lockout,* 19

Defendant claimants distinguish *O'Brien* on the basis that this case involves a lockout rather than a strike.

Although *O'Brien* and *Davidson* arose within the context of strikes rather than lockouts, the state[21] and federal[22] notice provisions, and therefore the preemption doctrine, apply equally to both situations. The plaintiff's conduct regarding the notice provisions is governed exclusively by federal law. We find that MCL 423.9; MSA 17.454(9) is preempted by § 8(d) of the National Labor Relations Act.

Defendants argue that both sides, labor and management, are obligated to give notice under the provisions of 29 USC 158(d) and the lockout notice provision of MCL 423.9(a); MSA 17.454(9)(a). Since the notice provision is preempted by federal law, we look to the requirements of notice under federal law. No such dual notices are required. Whereas MCL 423.9; MSA 17.454(9) would require notice from the association prior to a lockout, federal law requires only that the party originally proposing contract changes (here the union) give notice. *United Furniture Workers v NLRB,* 118 US App DC 350; 336 F2d 738 (1964). See also *NLRB v Mar-Len Cabinets, Inc,* 659 F2d 995, 998 (CA 9, 1981); *Hooker Chemicals v NLRB,* 573 F2d 965 (CA 7, 1978); *NLRB v Painting & Decorating Contractors,* 500 F2d 54, 56 (CA 7, 1974). We find that the union gave the notice required under the act.

Since we have determined that Michigan's labor mediation statute governing lockouts is preempted by the National Labor Relations Act, what effect

Syracuse L R 599 (1968); Meltzer, *The lockout cases,* 1965 Sup Ct R 87; Summers, *Labor law in the Supreme Court: 1964 term,* 75 Yale L J 59 (1965).

[21] MCL 423.9(a); MSA 17.454(9)(a).

[22] 29 USC 158(d).

does it have on the parties' dispute concerning payment of unemployment compensation?

This Court in *Smith v Employment Security Comm*, 410 Mich 231; 301 NW2d 285 (1981), interpreted the unemployment benefit disqualification of MCL 421.29(8); MSA 17.531(8)[23] and held that a lockout is one form of a labor dispute which would disqualify an employee from receiving unemployment benefits, provided his unemployment was due to a labor dispute in which he was directly involved.[24]

Upon review, we must determine whether the findings of the MESC are supported by law and by competent, material, and substantial evidence on the whole record. MCL 421.38; MSA 17.540.[25] Since

---

[23] 1974 PA 104.

The statute provided at the time of the dispute:

(8) An individual shall be disqualified for benefits for any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by such labor dispute, in the establishment in which he is or was last employed, or to a labor dispute, other than a lockout, in active progress, or to shutdown or start-up operations caused by such labor dispute, in any other establishment within the United States which is functionally integrated with such establishment and is operated by the same employing unit.

[24] On July 2, 1986, the United States Supreme Court handed down its decision in *Baker v General Motors Corp*, 478 US —; 106 S Ct 3129; 92 L Ed 2d 504. *Baker,* however, does not affect the decision in the case at bar. *Baker* holds that § 29(8) of Michigan's Employment Security Act, which prohibits payment of unemployment compensation to employees who "finance" a strike, is not preempted by federal law. In the statute, the Legislature provided that an employee is ineligible for unemployment compensation if he has provided "financing"—by means other than the payment of regular union dues—for a strike that causes his unemployment. There was no question raised in this case suggesting that § 29(8) of the Michigan Employment Security Act was preempted.

[25] [T]he court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record.

there is no dispute as to the underlying facts raised in this appeal, the questions presented are to be treated as matters of law.

On the facts of this case, the referee determined that the employees were directly involved in a labor dispute, and therefore unable to recover unemployment compensation benefits.[26]

Having decided that the NLRA preempts Michigan's lockout-notice provision, and recognizing that *Smith* held five years ago that a lockout was one form of a labor dispute, under these facts the employees cannot recover unemployment compensation.

We therefore hold that the association was not required to give a ten-day notice before instituting a lockout. We reject the analysis of the Court of Appeals which held that the association had violated Michigan's lockout statute and that the statute was not preempted.

We reverse the decision of the Court of Appeals and reinstate the referee's decision.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with ARCHER, J.

---

[26] The board of review, in a two-to-one decision, reversed the decision of the referee. The majority held that the employees were not disqualified from receiving unemployment benefits since in certain situations, lockouts were not labor disputes. The board's decision was prior to this Court's holding in *Smith* that a lockout is one of the forms of a labor dispute. Therefore the board's decision was in error, and should be reversed. The decision of the circuit court, also decided before *Smith* is reversed.